In THE MATTER OF CHARLES HAUCK ON HABEAS CORPUS.

*Liquor traffic—Local option law—Synonymous terms—Constitutional law—Title of act.*

1. To "regulate" and to "prohibit" are not synonymous terms. *People v. Gadway*, 61 Mich. 285.

2. The *object* of Act No. 197, Laws of 1887, was to prohibit the sale of the kinds of liquor therein mentioned as a beverage in the counties where a majority of the voters should vote for prohibition, which object is not expressed in a title to *regulate* the manufacture of such liquors in the several counties of the State.

3. In testing acts of the Legislature by the clause of the Constitution requiring their object to be stated in the title, the Court should not, on the one hand, be so hypercritical as to require every matter of detail to be so stated, nor, on the other hand, so liberal as to render the constitutional provision nugatory. But regard should be had to the letter and spirit of the Constitution, the evils it was intended to prevent, the rights it was intended to preserve, and, so regarding it, to test the act which is claimed to be repugnant to this clause candidly and justly, and, if it shall appear that the constitutional provision has been disregarded, to declare the act unconstitutional and void.

*Habeas corpus* case. Argued May 1, and re-argued May 15, 1888. Prisoner discharged May 18, 1888. The facts are stated in the opinion.

*Thomas A. Wilson*, for petitioner.

*Moses Taggart*, Attorney General, *Eugene Pringle*, Prosecuting Attorney, *B. W. Shoemaker*, Assistant (*R. W. Butterfield*, of counsel), for the people.

[The authorities are so fully reviewed in the opinion, as also the points of counsel, that a further statement of same is omitted.—REPORTER.]

CHAMPLIN, J. Charles Hauck was convicted in the circuit court for the county of Jackson upon an information charging him with being engaged in keeping a saloon in the city of Jackson, where malt, brewed, fermented, and vinous liquors were sold and kept for sale at retail, and, while so engaged, he kept his saloon and bar therein open, and did not keep said saloon and bar closed, until 6 o'clock of the following morning, February 29, 1888; said February 29, 1888, being an election day; said election being held in the city and county of Jackson on said day, under and by virtue of a general law of the State, being Act No. 197 of the Laws of 1887 of said State, approved June 18, 1887; the said Charles Hauck not being engaged in selling drugs, etc.

The court sentenced him to pay a fine of $50 and costs, assessed at $25, and, in default of the payment of such fine and costs, that he be imprisoned in the county jail of said county until such fine and costs are paid; not exceeding, however, the period of 60 days from the day of sentence, which was on April 14, 1888. Default was made in the payment of the fine and costs, and Hauck was committed to the county jail, from whence he has petitioned this Court for a writ of *habeas corpus* to inquire into the cause of his detention. In his petition he alleges 13 reasons why his imprisonment is illegal, as follows:

"1. It is in violation of that part of Article 4, § 20, of the Constitution of this State, which requires the object of a law to be expressed in its title; said act being entitled 'An act to regulate the manufacture and sale of malt, brewed, or fermented, spirituous, and vinous liquors in the several counties in this State,' while the object of said act is to prohibit such manufacture and sale in counties where a majority of the electors voting at an election, to be called in accordance with the provisions of said act, shall vote against such manufacture and sale.

"2. Because it violates section 1, Art. 4, of the Constitution, in that it delegates to the people of the several counties legislative power vested by sa; section in the Senate and House of Representatives. Said act does not take effect in any county by its own terms and provisions, nor upon the judgment and determination of the Legislature; but takes effect only by virtue of the vote of a majority of the electors voting as aforesaid.

"3. Because said act does not make the holding of an election compulsory, but leaves it entirely to the option of the people of the several counties to act upon it or not.

"4. Because any township or city, containing one-fifth or more of the electors in a county, may force upon the other cities and townships an election against their wishes, thereby subverting the right of local self-government.

"5. Because the Legislature cannot authorize the holding of such election upon the petition of one-fifth of the voters of the county; it being the duty of the Legislature to provide for the holding of such election, or to refer it to some authority recognized by the Constitution.

" 6. Because the act does not provide any means for determining whether the applications for an election, presented to the county clerk, as provided for in section 1 of said act, are signed by one-fifth of the voters of the county, or that such signers are voters.

" 7. Because there is no provision in said act for making any record of the determination of the county clerk that one-fifth of the voters of the county have made such application for the holding of such election, or for the preservation of such applications, or the making of any record of the call issued by said county clerk for such election, or the preservation of any proof thereof, or any record or proof of any act in connection with the holding of such election until the return of the local election boards.

" 8. Because there is no provision in said act for giving notice to the electors of the townships and wards by the township clerks or inspectors of elections of the wards in any city or otherwise of the calling of said election, or time and place of holding the same.

" 9. Because no provision is made for the opening or closing of the polls, or the manner of conducting such election, excepting the manner of casting the ballots and making the returns.

" 10. Because there is no provision for a county canvass of the votes or returns, or other official determination of the result of the election.

" 11. Because the tabular statement of the votes cast in each voting precinct in the county, provided to be made by the county clerk, is made *prima facie* evidence of the truth of the matters therein contained, including the result of such election.

" 12. Because said act attempts to confer upon the majority of the electors voting at such election a power not possessed by the Legislature itself, viz.: To alter, amend, suspend, and supersede, as provided in section 1, other general statutes, as well those existing at the time of such vote as those which may be passed by the Legislature thereafter. The Legislature cannot revise, alter, or amend a law by reference to its title only. Const. Art. 4, § 25. Neither can it pass irrepealable laws.

" 13. Because said act was repealed by Act No. 313, Laws of 1887, being an act providing for the taxation and regulation of the traffic in liquors. The proviso in said last act designed to prevent such repeal is prohibitory legislation, and

entirely foreign to the object indicated by its title, and is in conflict with section 20, Art 4, of the Constitution."

About the same time the petition for *habeas corpus* was presented to us, another petition was presented by the people, on the relation of Charles E. Keefer, for a *mandamus* against the common council of the city of Hillsdale, to compel them to approve a bond presented to them for the purpose of complying with the provisions of Act No. 313, Laws of 1887, which requires every person engaged in the sale of liquors, except druggists, to present to the common council a bond for their approval on or before the first Monday in May. The common council refused to act upon the bond, for the reason that the provisions of the act aforesaid were suspended in the county of Hillsdale by a vote taken under Act No. 197, Laws of 1887. This act the relator alleges to be unconstitutional and void. The cases, involving the same questions, have been heard and argued together, and this opinion will cover the points taken in both cases.

Act No. 197, Laws of 1887, reads as follows:

"An Act to regulate the manufacture and sale of malt, brewed, or fermented, spirituous, and vinous liquors in the several counties in this State.

"SECTION 1. *The People of the State of Michigan enact,* That the manufacture and sale of malt, brewed, or fermented, spirituous, and vinous liquors in the several counties in this State be, and the same is hereby, regulated as follows:

"That upon application by petition, signed by not less than one-fifth of the voters of any county, as shown by the last preceding vote on Governor, who are qualified to vote for county officers in any county in this State, the county clerk of such county shall call an election to be held at the places of holding elections for State and county officers, to take place within 40 days after the receipt of such petition by said county clerk, to determine whether or not intoxicating liquors, as mentioned in section two of this act, shall be manufactured or sold within the limits of such designated county: *Provided,* That no election held under this act shall be held in any month in which an election for State, county, city, village, or township officers is held; and such question,

having been once submitted and decided by the votes of the electors, shall not be again submitted for a period of three years, but shall, at any time after the expiration of the said three years, upon a like petition, be again submitted.

"Notice that such a question is to be submitted shall be given by the county clerk for the same time and in the same manner as is provided by law for giving notice of special elections for county officers.

"The vote shall be by ballot, and the ballots shall be deposited in ballot-boxes furnished for that purpose, and separate poll-lists and tally-sheets shall be kept. The county clerk shall provide poll-lists, tally-sheets, and a sufficient number of tickets for such election, at each polling place, at the expense of the county.

"All the electors voting at any such election that the manufacture and sale of intoxicating liquors for use as a beverage shall be prohibited, shall have printed or written, or partly printed or partly written, on their ballots, the words, 'Against the manufacture and sale of intoxicating liquors;' and all the electors voting at any such election that such manufacture and sale shall not be prohibited, shall have printed or written, or partly printed or partly written, on their ballots, the words, 'For the manufacture and sale of intoxicating liquors,'

"The inspectors of elections, as provided by law, shall act, and shall have authority to appoint assistants, if any shall be necessary. The ballots shall be cast and counted, and the returns of the same shall be made from each voting precinct to the clerk of the county in which such election is held, in the manner prescribed by law, for the election of county officers.

'The clerk of said county shall enter in a book to be provided by him for that purpose a tabular statement of the number of votes cast for and against such proposition in each voting precinct in said county, as shown by said returns, together with the aggregate number of votes cast for and against such sale in the elective county. Said statements, so recorded, shall be a public record of the county, and shall be *prima facie* evidence of the truth of the matters therein stated.

"SEC. 2. That from and after the first Monday in May next after such special election, it is hereby declared unlawful to manufacture, sell, give away, or furnish malt, brewed, fermented, vinous, or intoxicating liquors of any kind, or in any quantity, or liquors any part of which is malt, brewed,

70 MICH. 26.

fermented, vinous, or intoxicating, or to keep for sale, or keep a place where such liquors are manufactured, or kept for sale, given away, or furnished, within the limits of any county in which a majority of the votes cast at the election next preceding, upon the question of prohibiting the sale of intoxicating liquors, as provided in section 1 of this act, have been cast against the manufacture and sale of intoxicating liquors; except where done by a druggist who is or who employs a registered pharmacist, strictly in compliance with the laws for the regulation of druggists.

"And whoever, within such limits, himself, or by an agent, or otherwise, thus manufactures, sells, furnishes, or gives away any such liquors, or keeps for sale, or keeps a place where such liquors are manufactured or kept for sale, given away, or furnished, upon conviction thereof in any court of competent jurisdiction, shall be fined in any sum not less than $50 nor more than $500, or be imprisoned in the county jail not less than 10 days nor more than 6 months, or both, in the discretion of the court.

"SEC. 3. In any county in this State in which the electors of such county, as hereinbefore provided, have voted to prohibit the manufacture and sale of such liquors by a majority vote, then in such case the provisions of the general laws of this State for the taxation and regulation of the business of the sale, manufacture, or dealing in such liquors is suspended or superseded from and after the first day of May next following, so far as relates to the territory of such county, and all sales made by druggists in such county shall be under all the restrictions imposed upon druggists by said general laws of this State.

"Approved June 18, 1887."

Article 4, § 20, of the Constitution of this State, provides:

"No law shall embrace more than one object, which shall be expressed in its title."

Counsel for the petitioner claims that Act No. 197 is void because the object of the law is not expressed in its title.

In testing acts of the Legislature by this clause of the Constitution, we should not, on the one hand, be so hypercritical as to require every matter of detail to be stated in the title, nor, on the other hand, so liberal as to render the constitutional provision nugatory. But regard should be had to the

letter and spirit of the Constitution, the evils it was intended to prevent, the rights it was intended to preserve, and, so regarding it, to test the act which is claimed to be repugnant to this clause candidly and justly, and, if it shall appear that the constitutional provision has been disregarded, to perform the duty enjoined on us by our oath of office, and declare the act unconstitutional and void. The duty of the Court is well expressed in the brief of the counsel for the people as follows:

"This Court will construe. Act No. 197 so as to give it effect as a law, and hold it constitutional, unless the case is very clear, and the infraction free from reasonable doubt. If it is a matter of doubt whether this act was passed in disregard of the constitutional provisions, it will be sustained."

Judge COOLEY, in his work on Constitutional Limitations (p. 149), says:

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might, with entire propriety, have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are invested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so."

This language was quoted, and the principles stated applied, in the opinion of this Court written by Mr. Justice SHERWOOD, in the case of *Callaghan v. Chipman*, 59 Mich. 614 (26 N. W. Rep. 808); as was also the language of Mr. Justice COOLEY in *People v. Mahaney*, 13 Mich. 481, who, after referring to a practice which had prevailed of bringing together in one bill subjects diverse in their nature, and say-

ing that it was corruptive, both to the Legislature and State, adds:

"It was scarcely more so, however, than another practice, also intended to be remedied by the constitutional provision, by which, through dexterous management, clauses were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. * * * The framers of the Constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the Legislature should be fairly satisfied of its design when required to pass upon it."

Justice COOLEY further remarks, in *People v. Mahaney,* upon this subject, as follows:

"This purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title. To require that every end and means necessary to the accomplishment of this general object should be provided for by a separate act relating to that alone would not only be senseless, but would actually render legislation impossible."

Other cases where this clause has received consideration by this Court are the following: *Ryerson v. Utley,* 16 Mich. 269; *Swartwout v. Railroad Co.,* 24 Id. 398; *Aud. Gen. v. Monroe Co.,* 36 Id. 70, 76; *Kurtz v. People,* 33 Id. 282; *People v. Hurlbut,* 24 Id. 44, 45; *Stockle v. Silsbee,* 41 Id. 615 (2 N. W. Rep. 900); *People v. Bradley,* 36 Id. 447; *Thomas v. Collins,* 58 Id. 64 (24 N. W. Rep. 553); *Bissell v. Judge,* Id. 237 (24 N. W. Rep. 886); *People v. Gadway,* 61 Id. 285 (28 N. W. Rep. 101); *Manufacturing Co. v. Judge,* 58 Id. 381 (25 N. W. Rep. 372); *People v. Beadle,* 60 Id. 22 (26 N. W. Rep. 800); *Church v. Detroit,* 64 Id. 571 (31 N. W. Rep. 447).

Having called attention to the adjudicated cases in this Court respecting the constitutional provision above cited, and the purpose it was intended to subserve by being incorporated

in the fundamental law, I now come to an examination of the statute under consideration. When it was enacted, there was a general law in force regulating the sale of spirituous, malt, brewed, fermented, and vinous liquors, under certain restrictions and limitations, upon complying with which, and paying the taxes prescribed by another general law, it was lawful for any person to engage in the manufacture and sale of such liquors in any county of this State. These general laws were not repealed by the passage of the act in question.

In reviewing these various sections, it is apparent that the object of the act is to prohibit the manufacture and sale of liquors to be used as a beverage. There is no attempt by the Legislature to disguise this object in the body of the act. In section 1 they say that the electors who are in favor of *prohibiting* the manufacture and sale of intoxicating liquors *for use as a beverage* shall vote *against,* and those who are opposed to *prohibition* shall vote *for,* the manufacture and sale of such liquors. Section 2 makes the object still more plain by declaring it unlawful to manufacture or sell liquors in any county in which a majority of the votes *cast upon the question of prohibiting* the sale of intoxicating liquors was against the manufacture and sale. And because it is prohibited, section 3 suspends the general laws taxing or regulating the sale of liquors as a beverage in any county in which the electors *have voted to prohibit* the manufacture and sale of such liquors by a majority vote.

It is too plain for argument that the object of this act was to prohibit the sale of fermented, vinous, spirituous, and intoxicating liquors as a beverage in such counties as the majority of the electors should vote for prohibition. But, to show still further the object the Legislature had in view in enacting this law, attention is called to the fact that after the passage of this act, and before it took effect as law, another act was passed by the same Legislature, entitled "An act to provide

for the taxation and regulation of the business of manufacturing, selling, keeping for sale," etc., spirituous and intoxicating liquors; the last section of which provides that the act shall not be operative, except as to druggists, in any county *that shall have prohibited* the manufacture and sale of liquors, etc. These statutes are *in pari materia,* and the expression used in the latter act affords a complete demonstration of the legislative sense of its own language in the former act, and shows conclusively that the object the Legislature had in view when passing the law in question, as indicated by the language used in the body of the act, was to permit counties severally to adopt prohibition as regards dealing in intoxicating liquors as a beverage.

Is this object fairly expressed in the title, which reads:

"An act to regulate the manufacture and sale of malt, brewed, or fermented, spirituous, and vinous liquors in the several counties in this State?"

This question might be very properly answered by contrasting the title adopted with one which would fairly express the object of the act, as for instance,—

"An act to authorize the suspension in the counties of this State, severally, of the general laws relative to the taxation and regulation of the manufacture and sale of vinous, malt, brewed, fermented, spirituous, and intoxicating liquors, by a vote of the electors of the several counties, and to prohibit the manufacture, sale, giving away, or furnishing such liquors, in the counties so voting to suspend the general laws aforesaid."

Is there anything in the title of this act to indicate that the object of the law was to suspend the general laws of the State relating to the traffic in liquors, or to authorize this to be done by a vote of the electors of the several counties? Or is there anything in such title to indicate that the object of the law was to give the option to the electors of any county to prohibit the manufacture and sale of liquors as a beverage? There certainly is not, unless the expression "to regulate"

means the same, when applied to a law, as "to prohibit" or "to suspend the general laws."

This Court held in the case of *People v. Gadway*, 61 Mich. 285 (28 N. W. Rep. 101), that the words "regulate" and "prohibit" were not synonymous; and that under a title of an act to regulate the sale of spirituous, malt, brewed, fermented, and vinous liquors, etc., the Legislature could not prohibit the sale of liquor as a beverage in a specified territory. That decision is decisive of the question under consideration, unless we were in error in the conclusion reached in that case. It is proper, therefore, to examine somewhat the line of authority by which that case is supported.

In the case of *Town of Cantril v. Sainer*, 59 Iowa, 26 (12 N. W. Rep. 753), an ordinance was entitled "Regulating the use and sale of intoxicating liquors," the body of which was entirely prohibitory. The ordinance was enacted under a statute which required the subject to be clearly expressed in its title. The court said:

"The subject as found in the body of the ordinance is entirely prohibitory. There is no pretense at regulation. * * * Instead of the title of this ordinance being a clear statement of its subject, it is wholly inconsistent with it, and states a wholly different subject,—as different as regulation is from prohibition."

And the court held the ordinance void.

*Miller v. Jones*, 80 Ala. 89, was a case where a similar constitutional clause was under consideration. The title of the act was, "To regulate the sale, giving away, or otherwise disposing of spirituous," etc., and the court, in holding void the body of the act, prohibiting the sale, etc., says:

"'Regulate' and 'prohibit' have different and distinct meanings, whether understood in their ordinary and common significations, or as defined by the courts in construing statutes. * * * To regulate the sale of liquor implies, *ex vi termini*, that the business may be engaged in or carried on, subject to established rules or methods. Prohibition is to

prevent the business being engaged in or carried on entirely or partially. The two purposes are incongruous. A title which expresses a purpose to regulate, gives no indication of a purpose to absolutely prohibit."

It was held in *City of Emporia v. Volmer*, 12 Kan. 630, that the word "restrain" is not synonymous with "prohibit" or "suppress."

In *Bronson v. Oberlin*, 41 Ohio St. 478, the act was entitled—

"An act authorizing certain incorporated villages to regulate the sale of intoxicating liquors therein."

The court held this act, so entitled, did not give authority to prohibit, and said:

"Considering the words of this act, together with its title, we conclude that the power conferred was to regulate the sale of intoxicating liquors, and to provide against evils resulting therefrom, but not to prohibit."

In *Heise v. Council*, 6 Rich. Law, 415, the court said:

"It cannot be denied that the town council may lawfully adopt any regulations and impose any restraints on the retailing of spirituous liquors which may be proper to prevent any nuisance or inconvenience. But the suppression of a trade is not a regulation. To be regulated, the trade must subsist. The ordinance does not impose regulations or restraints on the relator's trading, but prohibits it."

In *Sweet v. Wabash*, 41 Ind. 7, the court held that, under an authority conferred by statute to regulate and license the sale of intoxicating liquors, no authority was conferred to prohibit the sale of such liquors. So in *Duckwall v. New Albany*, 25 Ind. 283, the power "to regulate ferries" was held not to include the power to prohibit ferries unless a license at an expense of $300 was first obtained from the city.

In *State v. Mott*, 61 Md. 297, the city of Baltimore was given power to—

"Regulate the places for manufacturing soap and candles,

and erecting of slaughter-houses and distilleries, and where every other offensive trade is carried on.''

The council passed an ordinance prohibiting the operation within the city of kilns for burning oyster shells and stone lime. It was held that the ordinance was unauthorized, and the court, speaking of the power to regulate, said:

"That power assumes the existence of such trades, and that they may be carried on within the limits of the city. The power delegated is simply to regulate the places where they are carried on, and not to forbid their being carried on, or to destroy them altogether."

And it was further held that, so long as such trades were conducted and carried on in such manner as not to render them nuisances, it is well settled that the power simply to regulate does not embrace a power to prohibit or destroy a trade or occupation.

Other authorities might be cited to show that to "regulate" is not the same as to "prohibit," but is essentially different. Enough have been cited to show that the decision of this Court in *People v. Gadway* was properly made. We adhere to the views expressed in that opinion, and for the reasons stated we are clearly of the opinion that the object of Act No. 197, Laws of 1887, is not expressed in its title, and hence is unconstitutional and void.

The Attorney General, representing the people, concedes that absolute prohibition cannot be enacted under a title to regulate, but he insists that, under a title to regulate the sale of liquors, it is competent to prohibit the sale of liquors to specified classes of persons, at specified times and places, and in specified quantities; the number of the class or the quantity is a matter entirely of legislative discretion.

It is also insisted upon by counsel representing the people that the act regulates the manufacture and sale of liquors mentioned in the title in the counties voting a certain way under the act, by prohibiting such manufacture and sale,

"except where done by a druggist who is or who employs a registered pharmacist," and that one means adopted by the Legislature to regulate this traffic is partial prohibition. This reasoning is wholly untenable as applied to the act in question. Druggists are not allowed to sell liquor to be used as a beverage. They are permitted by the general law to sell liquors for medicinal, mechanical, and sacramental purposes *only*. Their sales were and are already regulated by existing general laws. This act does not pretend to regulate druggists. It simply excepts them from the operation of the act, and permits them to carry on their business under the general laws. This act, when enforced, suspends the general laws as to all other persons, and wholly prohibits them from carrying on the business. This is not regulation by partial prohibition, but is total prohibition to all persons who by the general law are authorized thereunder to sell liquors to be used as a beverage. If the position assumed is correct, then, under a law entitled to regulate the sale of vinous and spirituous, brewed, or fermented liquors, an act might be passed totally prohibiting the sale of such liquors except for sacramental purposes; and it would not be a prohibitory law, but a law to regulate by partial prohibition. This would be absurd. The act is total prohibition, so far as concerns the manufacture of intoxicating liquors.

As what has been said fully disposes of the law in question, as well as the cases before us, we do not feel inclined to express any opinion upon the other serious questions raised and argued. Certain defects claimed to be fatal to the validity of the law were pointed out, which it is proper should be referred to.

1. It provides that the election shall be called by the county clerk upon the application by petition, signed by not less than one-fifth of the voters of any county, as shown by the last preceding vote for Governor. This enables the clerk to definitely determine the number who should sign the petition.

But how is the clerk to ascertain whether the signers are voters, or whether the signatures to the petition are genuine? It is suggested that he may consult the poll-lists in his office. By this means he could ascertain whether the names appearing upon the petition were also upon the poll-lists, but he could not determine from such inspection whether they were genuine signatures, or had been placed upon the petition by authority of the voter. It requires the clerk to act without evidence or verification of the qualifications or genuineness of the signatures of the signers of the petition. To say the least, it places a conscientious official in an embarrassing situation. But, worse than this, it leaves the facts open for contest when the law is sought to be enforced by a criminal prosecution.

2. There is no provision that the petition shall be filed or preserved. The law is silent on this subject. The clerk, after receiving the petition, may throw it into the waste-basket or destroy it; and yet this important paper lies at the foundation of a proceeding which is to suspend the general laws of this State upon the liquor traffic, and taxation thereof, for three years, and makes operative a law which inflicts fines and imprisonment.

3. The law requires the clerk to give notice in the same manner as is provided by law for giving notice of special elections for county officers. In such case the law requires him to send the order for a special election to the township clerk of each township, and to one of the inspectors of election in each ward of any city in his county. He gives no notice to the electors of the time and place of holding the election, or of the question to be submitted. And this act makes no provision for notice to the electors to be given by the town clerk and inspectors.

4. It makes no provision as to the furnishing of ballot-boxes, nor when the polls shall open or close, nor that the

election shall be conducted in accordance with any law of this State.

5. The act states—

" The ballots shall be cast and counted, and the returns of the same shall be made from each voting precinct to the clerk of the county in which such election is held, in the manner prescribed by law for the election of county officers."

There is no law requiring returns from the voting precincts to be made to the county clerk when county officers are elected. The law, in such cases, requires the inspectors of election to appoint one of their number to attend the county canvass; and these, when assembled, constitute the board of county canvassers. These canvassers bear the returns to the board of canvassers, and it is only when the inspector so appointed is unable to attend the meeting of the board that he is required to send his returns to the county clerk, who is to lay the same before the board of canvassers.

6. There is no provision for a county canvass, or other determination of the result. No public notice is given of the votes cast against and for the question, and the record of the tabular statement which shows the result is only made *prima facie* evidence of the truth of the matters therein stated. While courts are presumed to know what laws of a public nature are in force in the State, they are not presumed to know what counties have voted to suspend such laws; and the consequences would be that whether the law is in force in a particular county becomes a question of fact, which enters into the element of the offense, and makes the question of law or no law an issue in every prosecution for its violation. It will be seen at a glance that this would lead to vexatious and expensive litigation, and involve the administration of a criminal law in uncertainty. The defense would have the right to show, if they could, that the petitioners were not qualified voters, and that they did not constitute one-fifth of the qualified voters. They would have the right to show

fraud, error, or mistake in the returns and tabulated state-ment, in order to show that prohibition had not been adopted and the general law suspended. Statutes of such importance cannot lawfully be left to such uncertainty.

The prisoner's detention being unauthorized, he must be discharged from custody.

The other Justices concurred.