GROSVENOR *v.* DUFFY.[1]

FOOD—ADULTERATION—COLORING OF OLEOMARGARINE—STATUTES
—INSUFFICIENT TITLE.

> The title of Act No. 193, Pub. Acts 1895, entitled "An act to pro-
> hibit and prevent adulteration, fraud, and deception in the
> manufacture and sale of articles of food and drink," is not
> broad enough to cover the provision of the amendatory act
> (Act No. 118, Pub. Acts 1897, § 3) making the coloring of an
> article of food an adulteration, and its sale a crime, where the
> coloring matter used is not deleterious, and is not used for the
> purpose of fraud or deception; and the sale of oleomargarine
> colored with a harmless substance, which the statute permits
> to be used for the coloring of butter, where it is properly
> labeled, stamped, and marked with the name and address of
> the manufacturer, does not subject the seller to criminal
> prosecution.

*Certiorari* to Washtenaw; Kinne, J.     Submitted
April 4, 1899.     Decided September 19, 1899.

*Mandamus* by Elliot O. Grosvenor, dairy and food
commissioner, to compel John L. Duffy, a justice of the
peace, to issue a warrant for an alleged violation of the
pure-food law.     From an order denying the writ, rela-
tor brings *certiorari*.     Affirmed.

The relator presented to a justice of the peace a com-
plaint in writing, charging that:

"Caspar Rinsey did unlawfully offer and expose for
sale, and did unlawfully sell and deliver to said Elliot O.
Grosvenor, a large quantity, to wit, one pound, of oleo-
margarine, which was then and there an article of food
intended to be eaten by man, and which was then and
there adulterated, within the meaning of Act No. 193 of
the Public Acts of Michigan for the year 1895, as amended
by Act No. 118 of the Public Acts of Michigan for the
year 1897, in this, to wit: That said oleomargarine was

---

[1] Rehearing denied December 12, 1899.

then and there an imitation of another article of food, to wit, an imitation of a rich June butter; and the said oleomargarine had been and was then and there colored, whereby inferiority was concealed, and by which means it was made to appear better and of greater value than it really was, to wit, in this: That it was thereby made to appear like butter of a grade which was then and there of a greater value than the said oleomargarine.   That the said oleomargarine was labeled 'Oleomargarine,' and stamped with the seller's name, and that the tub and wrapper which contained the same bore the name and address of the manufacturer, and was distinctly labeled 'Oleomargarine.'   Said complainant, on his oath aforesaid, further says that he called for oleomargarine, and that the said oleomargarine was sold to him as oleomargarine, the same as to an ordinary customer, freely and without objection, and that for this reason he did not take the steps required by section 6, Act No. 154, of the Public Acts of Michigan for the year 1897."

The justice refused to entertain the complaint and issue a warrant, whereupon the relator applied to the circuit court for Washtenaw county for the writ of *mandamus* to compel the justice to issue a warrant and proceed to hear the case.   The circuit court refused the writ, and the case is brought to this court, by *certiorari*, for review.

*Smedley & Corwin*, for relator.

*John J. Speed*, for respondent.

*Jay P. Lee, amicus curiæ.*

GRANT, C. J. (*after stating the facts*).   The title of the act reads:

"An act to prohibit and prevent adulteration, fraud, and deception in the manufacture and sale of articles of food and drink."

Section 3, as amended by Act No. 118, Pub. Acts 1897, so far as it applies to this case, reads:

"An article shall be deemed to be adulterated, within the meaning of this act: * * * *Fourth*, if it is an

imitation of, or is sold under the name of, another article; * * * *sixth*, if it is colored, coated, polished, or powdered, whereby damage or inferiority is concealed, or if by any means it is made to appear better or of greater value than it really is; *seventh*, if it contains any added substance or ingredient which is poisonous or injurious to health: *Provided*, that nothing in this act shall prevent the coloring of pure butter: *And provided further*, that the provisions of this act shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food, if each and every package sold or offered for sale bear the name and address of the manufacturer, and be distinctly labeled under its own distinctive name, and in a manner so as to plainly and correctly show that it is a mixture or compound, and is not in violation with definition fourth and seventh of this section."

It is not claimed that the sale made by Rinsey violates subdivision 7.

The act charged in the complaint is neither adulteration, fraud, nor deception, under any definition of these words to be found in any dictionary. Adulteration is "the act of corrupting or debasing; the act of mixing something impure or spurious with something pure or genuine, or an inferior article with a superior one of the same kind." Bouv. Law Dict.; Cent. Dict. Counsel do not urge that it comes within the word "fraud" or "deceit." Neither is it urged that the article is made to appear of greater value than it really is. It is not claimed that the coloring matter used is in the least deleterious. The law permits its use to color butter. Counsel rely upon *People* v. *Snowberger*, 113 Mich. 86. That case is not in point. The gravamen of the offense there was that the article of food was damaged, inferior, its inferiority concealed, and it was made to appear of greater value than it really was. This brings us to the only question we need to determine, viz., Is the title to the act broad enough to include the sale complained of? Would any person reading the title to the bill, in the legislative journals or elsewhere, suppose that the bill would make criminal an act which in itself was entirely harmless, honest, innocent, and contained no

element of wrongdoing? or that it would change the well-known definition of a word so as to include within it things which were in no sense akin to it, and which could only be included in it by the most arbitrary legislative enactments? Would a manufacturer of or dealer in butter or oleomargarine be notified by the title that the harmless coloring of either was not only to be prohibited, but to be punished by fine or imprisonment or both? There can be but one answer to these questions. When the legislature attempts to change definitions, and to make acts criminal which *per se* are innocent and contain no element of wrong, there must be something in the title to show such purpose or object, under section 20, art. 4, of the Constitution. The title contains not even an intimation that an entirely innocent act is to be made a crime. It follows that this part of the act is void. *Bissell* v. *Wayne Probate Judge*, 58 Mich. 237; *Northwestern Manfg. Co.* v. *Wayne Circuit Judge*, Id. 381 (55 Am. Rep. 693); *McKellar* v. *City of Detroit*, 57 Mich. 158 (58 Am. Rep. 357).

This statute is assailed as unconstitutional upon other grounds. This disposal of the case renders it unnecessary to discuss them. How far the legislature may go, under the police power inherent in the State, in prohibiting and punishing acts which in themselves are perfectly harmless, would be an interesting subject of inquiry; but, as it is not necessary to a disposal of the case, we decline to enter upon it.

Judgment affirmed.

The other Justices concurred.