SHEPHERD *v.* JUDGE OF THE RECORDER'S COURT OF THE CITY OF DETROIT.

1. CONSTITUTIONAL LAW—TITLE OF STATUTES—CRIMINAL LAW—OLEOMARGARINE, SALE OF—ADVERTISEMENT.

Under art. 5, sec. 21, of the Constitution, requiring the object of any statute to be single and to be expressed in the title, Act No. 147, Pub. Acts 1899 (2 How. Stat. [2d Ed.] § 3225), is invalid: the title "An act in relation to the manufacture and sale of oleomargarine or imitation butter" is insufficient to fairly apprise the reader that it was intended to prohibit thereby the association of the word butter with any advertisement of oleomargarine and to create a punishable offense.

2. CRIMINAL LAW—ADVERTISING—OLEOMARGARINE—SALES.

Mandamus should not issue to compel the trial court to
175 MICH.—13.

vacate an order quashing an information against respond-
ent for violating Act No. 147, Pub. Acts 1899 (2 How.
Stat. [2d Ed.] § 3225), forbidding the use of the words
butter, etc., in any advertising matter relating to the sale
of oleomargarine, and charging respondent with publish-
ing the following advertisement, to wit: "Why pay high
prices for butter?   Let us send you a trial order of our
fresh churned rolls at 22c and 25c lb., etc."

Mandamus by Hugh Shepherd, prosecuting attorney
for the county of Wayne, to compel William F. Con-
nolly, judge of the recorder's court of the city of De-
troit, to set aside an order quashing an information
and to proceed with the trial of Frank G. Lafer.  Sub-
mitted January 14, 1913.   (Calendar No. 25,389.)
Writ denied May 28, 1913.

*Roger I. Wykes, Attorney General, Hugh Shepherd,
Prosecuting Attorney,* and *Robert M. Toms, Assistant
Prosecuting Attorney,* for relator.

*Ormond F. Hunt,* for respondent.

BROOKE, J.   This is an   application by the prose-
cuting attorney of Wayne county for a writ of man-
damus requiring the respondent, associate recorder
of the city of Detroit, to set aside an order quashing
an information against one Frank G. Lafer, and to
proceed with the trial of said Lafer under the infor-
mation filed in said cause.   The information was filed
under Act No. 147 of the Public Acts of 1899 (2 How.
Stat. [2d Ed.] § 3225), the title and applicable pro-
visions of which are as follows:

"An act in relation to the manufacture and sale of
oleomargarine or imitation butter."
"SEC. 4.   No person shall use in any way, in con-
nection or association with the sale or exposure for
sale or advertisement of any substance designed to be
used as a substitute for butter, the word 'butter,'
'creamery' or 'dairy,' or the name or representation
of any breed of dairy cattle, or any combination of such

word or words   \*   \*   \*   or symbols or combinations thereof commonly used in the sale of butter."

"SEC. 7.   Whoever violates any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars, nor more than five hundred dollars, and the costs of prosecution, or by imprisonment in the county jail or State house of correction and reformatory at Ionia, for not less than six months nor more than three years."

The information follows:

"In the name of the people of the State of Michigan, Hugh Shepherd, prosecuting attorney in and for the said county of Wayne, who prosecutes for and on behalf of the people of said State in said court, comes now here in said court, in the July term thereof, A. D. 1912, and gives the said court to understand and be informed that Frank G. Lafer, late of said city of Detroit, in said county, heretofore, to wit, on the 16th day of March, in A. D. 1912, at the said city of Detroit, in the county aforesaid, did unlawfully use in connection and association with the sale and advertisement of a certain substance, to wit, oleomargarine, designed to be used as a substitute for butter, the word 'butter,' which said advertisement is in words and figures as follows, to wit:

'Why Pay High Prices for *Butter?* Let us send you a trial order of *our fresh churned rolls*, at 22c & 25c lb. 5-lb. rolls, $1, $1.10, $1.25. Let the goods convince you that we are selling something a great deal better than our competitors. Our goods are always fresh, sweet and wholesome—fit for the best table in the land—satisfaction guaranteed. Fresh oleomargarine, 12½c, 14c, 18c lb.'

"And which said above-described advertisement he, the said Frank G. Lafer, did cause to be printed and published in an issue of the Detroit Journal, under date of March 16, 1912, a daily paper printed, published, and circulating in the said city of Detroit, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan.

"HUGH SHEPHERD,
"Prosecuting Attorney."

After examination in the police court, Lafer was held to trial in the recorder's court, where he filed the following motion:

"Now comes Frank G. Lafer by Ormond F. Hunt, his attorney, appearing specially for this motion only and not appearing generally, and moves the court that an order be entered quashing, vacating, setting aside, annulling, and holding for naught the information and warrant in this case upon grounds as follows:

"*First.* The recorder's court of the city of Detroit has no jurisdiction to prosecute said defendant upon said information.

"*Second.* The information and warrant in this case are void upon their face in that no criminal offense against defendant is alleged and set forth therein.

"*Third.* Act No. 147 of the Public Acts of Michigan for the year of 1899 is unconstitutional, null, and void for reasons as follows: *(a)* It contravenes the provisions of the Constitution of the State of Michigan. *(b)* It contravenes the provisions of the Constitution of the United States and the amendments thereto."

Upon the argument of this motion the court below held that the provisions of section 4 were not fairly within the title, and therefore that, as to those provisions, the act was invalid under section 21, art. 5, of the Constitution:

"No law shall embrace more than one object which shall be expressed in its title."

This law is penal in character. One convicted for a violation of its provisions is liable to both fine and imprisonment.

The title of the act here under consideration is extremely broad and general. It is urged on behalf of respondent that one reading this title would not know whether the provisions of the act were to prohibit the manufacture and sale of oleomargarine or merely to regulate and restrict such manufacture and sale, nor whether the act was civil or penal in character. It is particularly asserted that the words, "in relation

to the manufacture and sale of oleomargarine," give no hint to the reader that the body of the act contains a clause making it a penal offense to use, in an *advertisement* of any substance designed to be used as a substitute for butter, the word "butter," etc.

It is clear that the use of the words in question, in the manner described, would be entirely innocent but for the inhibition of the statute. In the case of *Grosvenor* v. *Duffy*, 121 Mich. 220 (80 N. W. 19), this court had under consideration an act entitled "An act to prohibit and prevent adulteration, fraud, and deception in the manufacture and sale of articles of food and drink." The respondent was charged with selling oleomargarine colored in imitation of butter, contrary to the provisions of the statute. This court, speaking through Mr. Justice GRANT, said:

"This brings us to the only questions we need to determine, viz.: Is the title to the act broad enough to include the sale complained of? Would any person reading the title to the bill, in the legislative journals or elsewhere, suppose that the bill would make criminal an act which in itself was entirely harmless, honest, innocent, and contained no element of wrongdoing? Or that it would change the well-known definition of a word so as to include within it things which were in no sense akin to it, and which could only be included in it by the most arbitrary legislative enactments? Would a manufacturer of or a dealer in butter or oleomargarine be notified by the title that the harmless coloring of either was not only to be prohibited, but to be punished by fine or imprisonment or both? There can be but one answer to these questions. When the legislature attempts to change definitions, and to make acts criminal which per se are innocent and contain no element of wrong, there must be something in the title to show such purpose or object, under section 20, art. 4, of the Constitution. The title contains not even an intimation that an entirely innocent act is to be made a crime"—citing cases.

See, also, *People* v. *Beadle*, 60 Mich. 22 (26 N. W.

800) ; *In Matter of Lamphere,* 61 Mich. 105 (27 N. W. 882) ; *People* v. *Gadway,* 61 Mich. 285 (28 N. W. 101, 1 Am. St. Rep. 578) ; *In Matter of Hauck,* 70 Mich. 396 (38 N. W. 269) ; *In re Snyder,* 108 Mich. 48 (65 N. W. 562).

In no case brought to our attention has there been an attempt on the part of the legislature to pass a law penal in character under a title so broad and unilluminating as that here under consideration. It may well be doubted whether the advertisement in question comes within the inhibition of the statute even conceding its constitutionality. As the prosecution must fall for the graver reason, however, it is not necessary to discuss this point.

The writ is denied.

STEERE, C. J., and MOORE, MCALVAY, STONE, and BIRD, JJ., concurred with BROOKE, J.

OSTRANDER, J. In my opinion the advertisement is not in violation of the statute, and for this reason I think the recorder was right. I concur in denying the writ.