## PEOPLE v DOWNES

1. DRUGS AND NARCOTICS—STATUTES—CONSTITUTIONAL LAW—VAGUE-
NESS.

   A former statute prohibiting a physician from prescribing nar-
   cotic drugs if not "in good faith and in the course of his
   professional practice" was not unconstitutionally vague because
   the words "good faith" have a definite and well understood
   meaning and are free from ambiguity (MCLA 335.57[1]).

2. DRUGS AND NARCOTICS—STATUTES—"GOOD FAITH"—BURDEN OF
PROOF.

   Lack of "good faith" in prescribing narcotic drugs is a substantive
   element of the offense contained in the uniform narcotic drug
   act and the burden of proof on the issue of "good faith" is on
   the prosecution (MCLA 335.57[1]).

3. STATES—DELEGATION OF POWERS—FEDERAL LEGISLATION—CONSTI-
TUTIONAL LAW.

   A state may not delegate its legislative powers to the Federal
   government, but it may adopt existing Federal legislation by
   reference.

4. STATES—DELEGATION OF POWERS—FEDERAL LEGISLATION—CONSTI-
TUTIONAL LAW.

   State legislation which might become subject to future enact-
   ments of the Federal government amounts to an unconstitu-
   tional delegation of state legislative power.

5. STATUTES—VALIDITY—CONSTRUCTION—HYPOTHETICAL SITUATION.

   As a general rule of construction, the validity of a statute cannot
   be attacked on the ground that the statute is invalid when
   applied to a hypothetical situation not involved in the case.

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes § 238.
[2] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 23, 29.
[3, 4, 6, 7] 49 Am Jur, States, Territories, and Dependencies § 36.
[5] 50 Am Jur, Statutes § 471.

6. DRUGS AND NARCOTICS—STATUTES—DELEGATION OF POWERS—FED-
ERAL LEGISLATION—CONSTITUTIONAL LAW.

 The Michigan uniform narcotic drug act's reference to and reli-
 ance upon Federal narcotics laws does not amount to an
 unconstitutional delegation of state legislative power to Federal
 congress and agencies because the reference complained of—the
 inclusion of certain drugs as "narcotics" under the Michigan
 statute because they had been designated "narcotics" by the
 United States Treasury Department—was a reference to exist-
 ing Federal legislation, and the drugs in question were included
 in the Federal narcotics laws at the time the Michigan statute
 was adopted (MCLA 335.51[13]).

7. DRUGS AND NARCOTICS—STATUTES—TITLE OF ACT—CONSTITUTIONAL
LAW.

 The title of the Michigan uniform narcotic drug act is not
 unconstitutional in that it embraces more than one object,
 namely, regulation of the legitimate use of drugs and prohibi-
 tion of their illegitimate use, because although regulation and
 prohibition are not synonymous, they may be accomplished in
 one act since any regulation of narcotics involves of necessity a
 prohibition of prescribing narcotics in defiance of the regula-
 tions (MCLA 335.51 *et seq.).

Appeal from Recorder's Court of Detroit, Geral-
dine Bledsoe Ford, J. Submitted Division 1 Janu-
ary 3, 1973, at Detroit. (Docket No. 12935.) Decided
September 25, 1973. Leave to appeal applied for.

George O. Downes was convicted of violating the
Michigan uniform narcotic drug act. Defendant
appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Patricia J.
Boyle,* Assistant Prosecuting Attorney, for the peo-
ple.

*Samuel W. Barr,* for defendant.

Before: V. J. Brennan, P. J., and T. M. Burns and Adams,* JJ.

V. J. Brennan, P. J. Defendant is a physician, licensed to practice medicine in the State of Michigan. He was charged with a violation of the Michigan uniform narcotic drug act.[1] MCLA 335.51 *et seq.;* MSA 18.1071 *et seq.* He was charged with violating the following statute:

"A physician or a dentist, in good faith and in the course of his professional practice only, may prescribe, administer, and dispense narcotic drugs, or he may cause the same to be administered by a nurse or interne under his direction and supervision." MCLA 335.57(1); MSA 18.1077(1).

The specific accusation in the information was that he prescribed,

"certain narcotic drugs, to wit, Methadone, cocaine, dilaudid, and morphine sulphate and numorphan, by means of a written prescription, to certain persons, said persons known to him to be narcotic users or addicted to the use of narcotics, whose names are: LOUIS NEBULONE, SHIRLEY DAVIES, ROBERT KREUGER, MARIO DIVITA and PETER GIORDINO, and by so doing was not practicing in good faith and in the course of his professional practice."

The defendant doctor admitted prescribing such drugs to the named individuals knowing them to be addicted to the use of narcotics. The doctor denied that his actions were not in good faith, or not in the course of his professional practice. One doctor, who was not actively engaged in the practice of treating narcotic addicts, testified on behalf

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] This enactment has since been repealed, and replaced by the new Controlled Substances Act. 1971 PA 196, § 66, effective April 1, 1972.

of the state. Two doctors testified on behalf of the defendant, as did the defendant. The trial court gave a very thorough charge to the jury regarding "good faith". He was, nevertheless, convicted by a jury of the offense charged and now appeals as of right.

Defendant's first contention that the statute under which he was convicted is unconstitutionally vague and therefore void as a denial of due process has been considered and rejected by both the Illinois and California Supreme Courts. In *People v Guagliata,* 362 Ill 427; 200 NE 169 (1936), defendant was a licensed physician and pharmacist who was convicted of selling a narcotic drug in violation of an Illinois statute whose terms were identical to § 7(1) of the Michigan uniform act, except that the Illinois statute used the phrase "habit forming drugs", rather than "narcotic drugs".

Defendant contended that the statute was unconstitutional because the words used in it, "good faith", had no common or generally accepted meaning and the statute created an offense in ambiguous and uncertain language. The Supreme Court rejected the contention, saying:

"The words complained against have been defined in many cases in many jurisdictions. In *Crouch v First Nat Bank,* 156 Ill 342, [357; 40 NE 974, 979 (1895)], we said that 'good faith' means 'honest, lawful intent,' and in *McConnel v Street,* 17 Ill 253 [1855], we said that 'good faith' is 'the opposite of fraud and bad faith.' Numerous cases in other jurisdictions give substantially similar definitions. A liberal construction should be given constitutional provisions in order to sustain legislative enactments, and all doubts and uncertainties arising from the constitution, as well as the statute, should be resolved in favor of the validity of the statute. *(People v McBride,* 234 Ill 146 [84 NE 865; 123 Am St

Rep 82; 14 Ann Cas 994 (1908)].) The words 'good faith,' as used in paragraph 3, have a definite and well understood meaning, are free from ambiguity, and their use in the act does not violate the due process clause of the State or Federal Constitution. *People v Anderson,* 355 Ill 289 [189 NE 338 (1934)]; *Amberson v Amberson,* 349 Ill 249 [181 NE 825 (1932)]." 362 Ill at 432–433; 200 NE at 171.

Defendant in this case does not distinguish *Guagliata.* He notes only that the Illinois statute was amended after the opinion and suggests that *Guagliata* be limited to the Illinois Constitution and cases. *Guagliata* is persuasive authority against defendant's first contention. The words "good faith" in similar narcotics legislation were held not to be so vague and indefinite as to violate Federal due process by the California Supreme Court in *People v Nunn,* 46 Cal 2d 460; 269 P2d 813 (1956).

Defendant contends that § 18 of the uniform narcotic drug act compels a defendant in a prosecution under the act to assume the burden of proof that he did act in good faith. We do not read the section that way. Section 18 provides:

"In any complaint, information, or indictment, and in any action or proceeding brought for the enforcement of any provision of this act, it shall not be necessary to negative any exception, excuse, proviso, or exemption, contained in this act, and the burden of proof of any such exception, excuse, proviso, or exemption, shall be upon the defendant." MCLA 335.68; MSA 18.1088.

Lack of "good faith" is a substantive element of an offense charged under § 7(1). It is not an exception, excuse, proviso, or exemption contained in the act. Such exceptions, excuses, provisos, and exemptions referred to are matters of defense which, if presented in a prosecution at all, would

have to be presented by defendant. For example, § 8(1)(b) exempts from the application of the act preparations which are suitable for external use only and which contain narcotic drugs other than cocaine in such combinations as prevent their being readily extracted. Thus, in the prosecution of the present case, the people, by virtue of § 18, would not have to present evidence that the narcotics furnished by defendant were not contained in preparations exempted under § 8(1)(b). If the narcotics were, in fact, contained in a liniment exempted by § 8(1)(b), it would be up to defendant to prove that fact as a matter of defense. The people would not have to prove lack of an exemption as part of their case.

This section simply repeats the general statutory provision that negating statutory exceptions is unnecessary in prosecutions. MCLA 767.48; MSA 28.988.

Defendant contends that the uniform act's references to and reliance upon Federal narcotics laws amounts to an unconstitutional delegation of state legislative power to Federal congress and agencies. The subject references are contained in § 1(13), (14), and (15). MCLA 335.51(13), (14), and (15); MSA 18.1071(13), (14), and (15). Subsection 13 adopts as a catalogue of "narcotic drugs" the substances designated as such by the United States Treasury Department. Subsection 14 defines "federal narcotic laws". Subsection 15 refers to and adopts for use the official narcotics order form provided by the United States Commissioner of Internal Revenue.

Defendant particularly complains of subsection 13 which includes as narcotic drugs under the act synthetic narcotic drugs "which the bureau of narcotics of the United States treasury depart-

ment has designated as 'narcotics.' " He points out that two of the drugs which he is charged with having prescribed (methadone and dilaudid) are not mentioned specifically in the state uniform act.

The contention is without merit. While it is true that a state may not delegate its powers to the Federal government, it may adopt *existing* Federal legislation by reference. 16 CJS, Const Law, § 133, at p 563. State legislation which might become subject to *future* enactments of the Federal government amounts to an unconstitutional delegation of state legislative power. *Dearborn Independent, Inc v Dearborn,* 331 Mich 447; 49 NW2d 370 (1951). That case held invalid a statutory requirement that a newspaper used for publication of legal notices "shall have been admitted by the United States post-office department for transmission as mail, matter of the second class". *Independent, supra,* at p 454; 49 NW2d at p 375. The Court held that that provision "would make the validity of the publication of legal notices depend upon the future as well as present regulations of the United States post-office department", *Independent, supra,* at p 454; 49 NW2d at p 376, and "[t]he statute * * * attempts to incorporate into its standards any future changes of postal regulations as to second-class mail". *Independent, supra,* at p 456; 49 NW2d at p 376.

The second-class mail requirement of the statute in *Independent* was written in the future tense. The Federal definition of narcotic drugs in the present case is in the past tense: "which the bureau of narcotics of the United States treasury department *has designated* as 'narcotics.' " MCLA 335.51(13); MSA 18.1071(13). (Emphasis added.)

More importantly, defendant is not capable of raising the issue because he does not establish his

standing. As a general rule of construction, the validity of a statute cannot be attacked on the ground that the statute is invalid when applied to a hypothetical situation not involved in the case. *General Motors Corp v Attorney General,* 294 Mich 558; 293 NW2d 751 (1940). The drugs methadone and dilaudid were included in the Federal Harrison narcotics acts at the time the uniform narcotic drug act was adopted in Michigan in 1937. Defendant cannot show that the section is invalid as to him because the two drugs were not added by Federal action subsequent to the state legislation.

Defendant's final issue is frivolous.

He states that the title of the uniform act is unconstitutional because it embraces more than one object, namely, regulation of the legitimate use of drugs and prohibition of their illegitimate use. He cites *In the Matter of Charles Houck,* 70 Mich 396; 38 NW 269 (1888), for the proposition that regulation and prohibition are not synonymous. We agree so far. He then represents that regulation and prohibition are separate and distinct objects which cannot be combined in one act. In this, defendant is wrong. *Beacon Club v Kalamazoo County Sheriff,* 332 Mich 412; 52 NW2d 165 (1952), adequately answers defendant's contention. Regulation and prohibition may be accomplished in one act because "any regulation of the traffic involves, of necessity, a prohibition of conducting the business in defiance of the regulations". *Beacon, supra,* at p 422; 52 NW2d at p 169. The uniform act does not have more than one object, the control of narcotics traffic.

Conviction affirmed.

All concurred.