KLINKE v MITSUBISHI MOTORS CORPORATION

Docket Nos. 107730-107732. Argued April 7, 1998 (Calendar No. 2). Decided July 31, 1998.

James E. Klinke, as personal representative of the estate of Kimberly Marie Klinke, deceased, brought a products liability action in the Livingston Circuit Court against Mitsubishi Motors Corporation and others, alleging defects in seat belt design and defective manufacture of the left front steering knuckle of the Dodge Colt that the decedent was driving when she was killed. At the time of the one-car rollover accident, the decedent was wearing a lap belt, but not the car's shoulder harness. The court, Daniel A. Burress, J., granted the defendant's motion for summary disposition with regard to the seat belt claim, but denied summary disposition with regard to the defective manufacture claim. Thereafter, the court entered judgment on a jury verdict of $5,104,000 against the defendant, found that the decedent was ninety-percent negligent in not properly using a seat belt, and applied the statutory five-percent cap on comparative negligence for failure to use a seat belt, MCL 257.710e(5); MSA 9.2410(5)(5), to reduce the award. The Court of Appeals, McDONALD, P.J., and MARKMAN and C. W. JOHNSON, JJ., reversed, holding that the seat belt cap did not apply in products liability actions (Docket No. 168384). The plaintiff appeals.

In opinions by Justice WEAVER, joined by Justice TAYLOR, and by Justice BOYLE, joined by Chief Justice MALLETT, and Justice BRICKLEY, the Supreme Court held:

The seat belt statute does not apply in products liability actions.

Justice WEAVER, joined by Justice TAYLOR, further stated that the Michigan Vehicle Code is designed to provide for civil liability of owners and operators of vehicles. Nowhere in the title of the code is it provided that the act is concerned with the manufacture of motor vehicles or the civil liability of manufacturers. As a matter of statutory interpretation and constitutional principles, the statutes in the motor vehicle code cannot be applied to cases involving the civil liability of manufacturers. Accordingly, § 710e's cap on a reduction for comparative negligence for failure to wear a seat belt, does not apply in the present action, which involves the liability of a manufacturer. Rather, under *Lowe v Estate Motors, Ltd*, 428 Mich

439 (1987), the plaintiff's decedent's failure to use her seat belt was properly submitted to the jury.

Although the vehicle code does not directly apply to products liability actions, some portions of the code may be relevant in products liability actions under other theories of law. In determining whether the violation is relevant to the facts presented at trial, the court must consider whether the statute is intended to protect against the result of the violation, the plaintiff is within the class intended to be protected by the statute, and the evidence will support a finding that the violation was a proximate contributing cause of the occurrence. Where these factors are met, the violation of a safety statute would be admissible as evidence creating a rebuttable presumption of negligence, even where the statute does not directly apply to the type of action at issue because of its title.

Justice BOYLE, joined by Chief Justice MALLETT, and Justice BRICKLEY, concurring, stated that the damages reduction cap in the safety belt law, by its express terms, limits its application to cases arising under the no-fault act, i.e., those that relate to civil liability arising out of the ownership and operation of a motor vehicle. The fact that the safety belt statute tracks the language of the no-fault act demonstrates the Legislature's clear intent to apply the five-percent limitation on reduction of damages for a plaintiff's negligence within the context of the no-fault act. No such intent is demonstrated with respect to actions for defects in design and manufacture of an automobile. On the basis of the statutory language of the safety belt statute, a products liability case generally falls outside the scope of the damages reduction cap. By definition, a defendant's liability in a products liability action is not the consequence of negligence arising out of the ownership, maintenance, or operation of a motor vehicle. Thus, application of the safety belt statute to the defendant's liability on these facts would be error.

Affirmed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the seat belt statute was intended by the Legislature to apply in products liability actions and that the application of the statute in such actions creates no Title-Object Clause violation.

The Title-Object Clause insures that adequate notice will be given of the possible effects of a law enacted by the Legislature. The Legislature has the right to limit an act in its title or to provide for broader application. The mere fact that the seat belt statute mentions the liability of owners and drivers but does not mention manufacturers is inconclusive. It does not evidence a legislative intent to limit the act to owners and drivers. The title of the statute mentions owners and drivers because its purpose is to create liability

for owners and drivers. There is a vast difference between creating liability and affecting liability, which is what the seat belt statute does. It does not follow that its application to manufacturers is unconstitutional.

While the seat belt statute might increase the liability of a manufacturer today, at the time it became law, the statute lessened the liability of manufacturers. To determine properly whether a title-object violation has occurred, the state of the law at the time an act was adopted must be examined. On the date that the seat belt statute became law, it did not create liability for manufacturers. Instead, it limited the recovery of plaintiffs who failed to comply with its provisions. It provided a penalty for violation of the standard in the form of a civil infraction. To further encourage seat belt usage, the act provided the added penalty of allowing the admission at trial of evidence of a plaintiff's failure to properly use a seat belt.

Evidence of failure to use a seat belt was not admissible in any action, whether it was for products liability or for negligence, because contributory negligence acted as an absolute bar to plaintiffs who were only slightly at fault. When the Legislature enacted the seat belt statute, it replaced a zero-percent reduction under the common law with a five-percent reduction for violation of the statute as a penalty specifically authorized by the code's title and as a punishment for drivers and front seat passengers. It was not a windfall for plaintiffs, but was exactly the type of provision specifically authorized in the title of the act. The Legislature intended the broad-based penalty of the statute to be applicable in any action involving a motor vehicle accident.

Application of the motor vehicle code in products liability actions through negligence per se, alone, is inconsistent with legislative intent. Negligence per se allows the use of a violation of a statutory standard of care as evidence of negligence. The seat belt statute provides for the admission of otherwise excluded evidence and limits its use. It is a standard of care that carries with it a limited penalty for its violation. Applying the seat belt statute through negligence per se would allow use of the evidence without the limit placed on it by the Legislature.

219 Mich App 500; 556 NW2d 528 (1996) affirmed.

*R. Stephen Olsen* and *V. Carl Shaner* for the plaintiff-appellant.

*Dykema, Gossett, P.L.L.C.* (by *Craig L. John* and *Mary E. Royce*), for the defendants.

Amici Curiae:

*Lee R. Franklin* for Michigan Trial Lawyers Association.

*John P. Raleigh* and *Susan L. Barnowski* (*Hugh F. Young, Jr.*, of counsel), for Product Liability Advisory Council, Inc.

*Clark, Hill, P.L.C.* (by *J. Walker Henry* and *Duane L. Tarnacki*), for Michigan Manufacturers Association.

WEAVER, J. We granted leave to decide whether the Michigan Vehicle Code's seat belt statute, which makes evidence of a plaintiff's failure to use a seat belt admissible and imposes a five-percent cap on reduction in comparative negligence, is applicable in a products liability action against an automobile manufacturer. We conclude that the Michigan Vehicle Code statute, with its five-percent cap on damages reduction, is not applicable in a products liability action and affirm the Court of Appeals.

I

On June 25, 1988, plaintiff's twenty-three-year-old daughter, Kimberly Marie Klinke, was killed in a one-car rollover accident. Testimony at trial indicated that the left front tire of the decedent's Dodge Colt collapsed while she was traveling at highway speeds. Emergency workers found the decedent with her lap belt on, but with the Colt's shoulder harness behind her, unused.

Plaintiff brought a products liability suit against Mitsubishi Motors Corporation, the manufacturer of

the vehicle.[1] Plaintiff's complaint alleged defects in seat belt design and defective manufacture of the left front steering knuckle. The trial judge granted Mitsubishi's motion for summary disposition regarding the claim that the seat belt had been defectively designed, but denied summary disposition regarding the defective manufacture claim.

The defective manufacture claim was tried by a jury. The parties presented substantial testimony about the steering knuckle at trial. Plaintiff's expert testified that there were small fractures in the metal of the steering knuckle. Plaintiff's theory was that the knuckle collapsed, causing the car to roll over and killing plaintiff's daughter.

Defense experts testified that the crash was not caused by the collapse of the steering knuckle, but that the reverse was true: The steering knuckle collapsed as a result of the force of the rollover accident. The defense argued that the crash resulted from a sudden and violent correction in the direction of the vehicle by the driver. Defense experts also testified that, had the decedent worn her shoulder harness, she would not have sustained a head injury.

The jury returned a $5,104,000 verdict against Mitsubishi, but found that the decedent was ninety percent negligent for not properly using her seat belt. The trial judge applied the statutory five-percent cap on comparative negligence for nonuse of a seat belt

---

[1] She also sued the distributor of the vehicle, Chrysler Corporation, and John Colone Chrysler-Plymouth-Dodge, Inc., the dealership that sold the car. Mitsubishi is the only remaining defendant.

and awarded plaintiff $4,848,800. MCL 257.710e(5); MSA 9.2410(5)(5).[2]

The Court of Appeals reversed the trial judge's decision regarding the seat belt-cap issue, and held that the seat belt cap did not apply in products liability actions. 219 Mich App 500; 556 NW2d 528 (1996). We affirm the judgment of the Court of Appeals and remand the case to the trial court for recalculation of damages, consistent with this opinion.

II

The parties call upon us to decide whether the seat belt statute, MCL 257.710e(5); MSA 9.2410(5)(5), applies in a products liability action brought under MCL 600.2949; MSA 27A.2949.

As always, we first examine the language of the statute itself when interpreting its meaning:

> "The cardinal rule of all statutory construction is to identify and give effect to the intent of the Legislature. The first step in discerning intent is to examine the language of the statute in question." [*Chandler v Dowell Schlumberger, Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998), quoting *Shallal v Catholic Social Services of Wayne Co*, 455 Mich 604, 611; 566 NW2d 571 (1997) (citations omitted).]

The Legislature enacted the products liability statute in 1978.[3] It provided:

> In all products liability actions brought to recover damages resulting from death or injury to person or property, the fact that the plaintiff may have been guilty of contribu-

---

[2] The five-percent cap now appears at MCL 257.710e(6); MSA 9.2410(5)(6).

[3] 1978 PA 495, effective December 11, 1978. This act was repealed by 1995 PA 161, § 2. Today, the act appears at MCL 600.2957-600.2959; MSA 27A.2957-27A.2959.

tory negligence shall not bar a recovery by the plaintiff or the plaintiff's legal representatives, but damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff. [MCL 600.2949(1); MSA 27A.2949(1).]

In 1985, the Legislature adopted a mandatory seat belt law that punished failure to use seat belts, making it a civil infraction for front seat passengers in automobiles not to wear seat belts. MCL 257.710e; MSA 9.2410(5). The act also, and for the first time,[4] allowed evidence of failure to use a seat belt to be admitted in a court proceeding to prove comparative negligence. It provides:

Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle. However, such negligence shall not reduce the recovery for damages by more than 5%. [MCL 257.710e(6); MSA 9.2410(5)(6).]

Shortly after the statute was enacted, this Court held that under the common law, for purposes of comparative negligence, "evidence of a plaintiff's failure to use an available seat belt may raise a factual issue to be submitted for jury consideration." *Lowe v Estate Motors Ltd*, 428 Mich 439; 410 NW2d 706 (1987).

---

[4] Although comparative negligence had already been adopted by case law and statute, evidence of failure to use a seat belt had not before been admissible in negligence actions. *Lowe v Estate Motors Ltd*, 428 Mich 439; 410 NW2d 706 (1987).

III

Defendant Mitsubishi argues that the five-percent cap found in § 710e(4) of the Michigan Vehicle Code does not apply in products liability actions. We agree.

The Michigan Vehicle Code, as set forth in the title of the act, is designed, inter alia, "to provide for civil liability of owners and operators of vehicles . . . ."[5] Nowhere in the title of the code does it say that the act provides for the manufacture of motor vehicles or is concerned with the civil liability of *manufacturers*. It is a well-established principle of statutory construction that "express mention in a statute of one thing implies the exclusion of other similar things." *Jennings v Southwood*, 446 Mich 125, 142; 521 NW2d 230 (1994).

The instant case concerns the liability of a manufacturer, rather than the liability of an owner or operator of a vehicle. The decedent's failure to use her

---

[5] The title to the Vehicle Code provides:

AN ACT to provide for the registration, titling, sale, transfer, and regulation of certain vehicles operated upon the public highways of this state or any other place open to the general public or generally accessible to motor vehicles and distressed vehicles; to provide for the licensing of dealers; to provide for the examination, licensing, and control of operators and chauffeurs; to provide for the giving of proof of financial responsibility and security by owners and operators of vehicles; to provide for the imposition, levy, and collection of specific taxes on vehicles; and the levy and collection of sales and use taxes, license fees, and permit fees; to provide for the regulation and use of streets and highways; to create certain funds; to provide penalties and sanctions for a violation of this act; to provide for civil liability of owners and operators of vehicles and service of process on residents and nonresidents; to provide for the levy of certain assessments; to provide for the enforcement of this act; to provide for the creation of and to prescribe the powers and duties of certain state and local agencies; to repeal all other acts or parts of acts inconsistent with this act or contrary to this act; and to repeal certain parts of this act on a specific date.

seat belt could cause her damages to be reduced, but could not subject her to any liability in this suit. Section 710e both allows consideration of nonuse of a seat belt as evidence of negligence and limits the reduction for such comparative negligence to five percent. If § 710e were applied to the present products liability action, it would affect the liability of the manufacturer.[6]

It is a well-recognized principle that an act shall not exceed the scope of its title. *Maki v City of East Tawas*, 385 Mich 151; 188 NW2d 593 (1971). As long ago as 1888 this Court quoted from Judge COOLEY's treatise on Constitutional Limitations:

> "As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might, with entire propriety, have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title. They are invested with no dispensing power. The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so." [*In re Hauck*, 70 Mich 396, 403; 38 NW 269 (1888).]

---

[6] The dissent correctly points out that, at the time § 710e was enacted, its application in a products liability action would have *decreased* the liability of a manufacturer by allowing nonuse of a seat belt to be considered as evidence of comparative negligence. Now that the common law allows consideration of nonuse of a seat belt as evidence of comparative negligence (without any cap on the reduction in damages), application of § 710e would *increase* the liability of a manufacturer. The bottom line is that application of § 710e to a products liability action would affect the liability of the manufacturer. The issue before us is whether the title of the motor vehicle code allows application of § 710e to products liability actions.

We are to construe statutes in a constitutional manner if possible. *Gora v Ferndale*, 456 Mich 704, 710; 576 NW2d 141 (1998). As a matter of statutory interpretation, we must not, and under constitutional principles we cannot, apply statutes in the motor vehicle code to cases involving the civil liability of manufacturers.[7] Accordingly, § 710e's cap on the reduction for comparative negligence for failure to wear a seat belt, which is part of the motor vehicle code, does not apply in the present action, which involves the liability of a manufacturer. Rather, under *Lowe, supra,* plaintiff's decedent's failure to properly use her seat belt was properly submitted to the jury,[8] which found her ninety percent comparatively negligent. Under § 2949, the jury award should be reduced by the full amount of plaintiff's decedent's comparative negligence.

---

[7] The dissent incorrectly suggests that our holding (that application of the motor vehicle code to products liability actions would violate the Title-Object Clause) compels a conclusion that applying the code to pedestrians, bicyclists, passengers, or the state would similarly be unconstitutional. This critique ignores the fact that the title of the code includes provisions that address these examples, e.g., the title states that it provides for "regulation and use of streets and highways" and for the "regulation of certain vehicles operated upon the public highways of this state." Further, as discussed below, violation of a safety statute is admissible as evidence creating a rebuttable presumption of negligence even where the statute does not directly apply because of its title.

Further, the dissent apparently reads our opinion to hold that the motor vehicle code does not apply to manufacturers. This is incorrect. Rather, we hold that statutes in the motor vehicle code do not apply in products liability cases involving the civil liability of manufacturers. The question whether any of the myriad statutes of the motor vehicle code would apply to manufacturers in certain circumstances is not before us, and it is not appropriate for us to predetermine the issue.

[8] This issue was appropriately submitted to the jury as a matter of common law. The dissent incorrectly indicates that we are applying § 710e's provision allowing consideration of nonuse of a seat belt as evidence of comparative negligence, but ignoring its concomitant limitation of the reduction in damages therefor.

IV

We note that although the motor vehicle code does not directly apply to products liability actions, some portions of the code may be relevant in products liability actions under other theories of law. Specifically, this Court has held that violation of a safety or penal statute creates a rebuttable presumption of negligence.[9] *Klanseck v Anderson Sales & Service, Inc*, 426 Mich 78; 393 NW2d 356 (1986). In determining whether the violation is relevant to the facts presented at trial, the court must consider the following factors: "1. the statute is intended to protect against the result of the violation; 2. the plaintiff is within the class intended to be protected by the statute; and 3. the evidence will support a finding that the violation was a proximate contributing cause of the occurrence." *Id.* at 87. Where these factors are met, the violation of a safety statute would be admissible as evidence creating a rebuttable presumption of negligence, even where the statute does not directly apply to the type of action at issue because of its title.[10]

CONCLUSION

We hold that the Court of Appeals correctly concluded that the seat belt statute does not apply in

[9] The comparative fault doctrine is applicable in all products liability actions. The principles of negligence are the same for establishing comparative negligence. *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979).

[10] The dissent impliedly raises the question whether, under *Klanseck*, when a safety statute is applied outside the scope of the statute's title, any concomitant conditions on liability contained in the statute also apply. The present case does not require us to resolve this question because this case turns on common law, not a statutory provision.

products liability actions. Our resolution of this issue makes it unnecessary for us to address the remaining assignments of error raised by defendants. We affirm the judgment of the Court of Appeals and remand this case to the trial court for recalculation of damages, consistent with this opinion.

TAYLOR, J., concurred with WEAVER, J.

BOYLE, J. (*concurring*). I concur with Justice WEAVER's result, but I write separately to explain my rationale.

MCL 257.710e(6); MSA 9.2410(5)(6), the safety belt law, by its express terms, and consistent with the title of the Michigan Vehicle Code, limits its application to cases arising under the no-fault act, i.e., those that relate to civil liability arising out of the ownership and operation of a motor vehicle. Subsection 710e(6) of the Michigan Vehicle Code states:

> Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce the recovery for damages *arising out of the ownership, maintenance, or operation of a motor vehicle*. However, such negligence shall not reduce the recovery for damages by more than 5%. [Emphasis added.]

In the same fashion, the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, repeatedly uses the same or similar "term of art," i.e., "ownership, maintenance, or operation of a motor vehicle." Subsection 3101(2)(f) states:

> "Motor vehicle accident" means a loss involving the *ownership, operation, maintenance, or use* of a motor vehicle as a motor vehicle regardless of whether the accident also

involves the ownership, operation, maintenance, or use of a motorcycle as a motorcycle. [Emphasis added.]

Thus, reference in subsection 710e(6) of the Vehicle Code to recovery for damages or losses "arising out of the ownership, maintenance, or operation of a motor vehicle" is a direct reference to a term of art in the no-fault act.[1] More significantly, as explained below, MCL 500.3135(2); MSA 24.13135(2),[2] the provision providing the only statutory basis for recovery for automobile negligence after the no-fault act abolished recovery in tort, uses this same term of art. The fact that the safety belt statute tracks the language of the no-fault act demonstrates the Legislature's clear intent to apply the five-percent limitation on reduction of damages for a plaintiff's negligence within the context of the no-fault act. No such intent is demonstrated with respect to actions for defects in design and manufacture of an automobile. On the basis of the statutory language employed in the safety belt statute, a products liability case generally falls outside the scope of the statute. Thus, I concur with Justice WEAVER's result.[3]

---

[1] Cf. MCL 500.3105(1); MSA 24.13105(1); MCL 500.3106(1), (2); MSA 24.13106(1), (2); MCL 500.3121; MSA 24.13121.

[2] The facts giving rise to the case arose under the version of § 3135 in effect before its amendment by 1995 PA 222. Unless otherwise indicated, references herein are to the version in effect before 1995.

[3] Neither my reading nor Justice WEAVER's compels the conclusion that the provisions of the Michigan Vehicle Code can never be used in a products liability action. Evidence of violations of safety statutes, including those contained in the Vehicle Code, may still be admissible in products liability actions as evidence of negligence. See *Klanseck v Anderson Sales & Service, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). However, the Vehicle Code, designed to regulate the liability of "owners and operators of vehicles," was not intended to regulate the liability of a manufacturer in a products liability action by subjecting the manufacturer to liability for an owner's or operator's negligent operation of a motor vehicle. The dissent

The purported distinction in the dissenting opinion between "liability" and "damages" is unpersuasive. MCL 500.3135; MSA 24.13135 refers to actions "for damages." "Liability" is a legal term of art meaning the conditions to which the law will attach consequences.[4] The law will attach consequences to the failure to wear a safety belt where injuries arise out of the ownership, maintenance, or operation of a motor vehicle. In short, where a legal consequence (fault or liability) arises from failure to wear a safety belt, in an action "arising out of the ownership, maintenance, or operation of a motor vehicle," fault or liability and damages are terms that should be interpreted consistently.[5]

The only possible occasion for consideration of the five-percent cap on reduction of damages for failure to wear a safety belt is where liability, i.e., the plain-

---

would extend the safety belt statute beyond the context of the owner's or operator's liability and require the manufacturer to pay for losses the jury has attributed to the conduct of the driver. Because the Vehicle Code does not contemplate regulation of manufacturer liability, such an extension of its scope would be error.

[4] For example, chapter 18 of the Insurance Code defines "liability" as

legal liability for damages including costs of defense, legal costs and fees, and other claims expenses because of personal injuries, property damage, or other damage or loss . . . .

Although this definition is not part of the chapter in which the relevant statutes appear, it exemplifies the fact that the Legislature does not subscribe to the distinction the majority observes.

[5] The only damages "arising out of the ownership, maintenance, or operation of a motor vehicle" in this litigation are the damages caused by plaintiff's fault. To the extent that plaintiff's damages were caused by a product defect, they do not arise out of "ownership, maintenance, or operation." Thus, the five-percent cap would not apply. However, to the extent plaintiff's damages were caused by her own negligence, it is appropriate to allow the jury to consider the extent to which she caused her own injuries by failing to wear her safety belt.

tiff's right to damages "for noneconomic loss" beyond no-fault benefits, depends on the negligence of the other driver. Reading § 3105 (PIP benefits) and subsections 3135(1) and (2) together, the negligence of the other driver is only relevant "if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Subsection 3135(1). By limiting the five-percent cap in the safety belt statute to the "ownership, maintenance, or operation of a motor vehicle," thereby placing it into the context of the limited cause of action for negligence that survives the adoption of the no-fault act, the Legislature has effectively limited the safety belt nonuse damages cap to those actions arising specifically under MCL 500.3135(1); MSA 24.13135(1).[6] This conclusion, however, as observed in n 3, does not compel the conclusion that, in a products liability case, evidence of the plaintiff's negligent failure to comply with the separate requirement in the safety belt statute that requires drivers to fasten the belt would be precluded.[7]

---

[6] In the current version of the statute, the applicability of the five-percent cap is limited to MCL 500.3135(1), (2); MSA 24.13135(1), (2), because old subsection 1 was amended and divided into subsections 1 and 2 in 1995.

[7] This appears to be the crucial distinction overlooked by the dissent. MCL 257.710e(3); MSA 9.2410(5)(3), a safety provision, is broad enough to allow consideration of failure to wear a safety belt in any negligence action. However, MCL 257.710e(6); MSA 9.2410(5)(6), by its express terms, limits the cap on reduction of damages for nonuse to actions that "arise[] out of the ownership, maintenance, or operation of a motor vehicle." In other words, subsection 710e(3), being a safety provision, would be relevant to the consideration of the plaintiff's negligence in a products liability action under *Klanseck, supra*, regardless of whether the Legislature had ever enacted subsection 710e(6), because enactment of the requirement that front seat passengers wear their safety belts, subsection 710e(3), in 1985 eliminated the analytical foundation underlying the Court of Appeals decisions in *Romankewiz v Black*, 16 Mich App 119; 167 NW2d

The Legislature presumably knew what it was doing when it chose language limiting the safety belt law to the actions described in § 3135. The safety belt law does not apply separately to a manufacturer's liability in products liability cases. The Revised Judicature Act defines "product liability action" as "an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." MCL 600.2945(h); MSA 27A.2945(h). By definition, a defendant's liability in a products liability action is not a consequence of negligence "arising out of the ownership, maintenance, or operation of a motor vehicle." MCL 257.710e(6); MSA 9.2410(5)(6). Thus, application of the safety belt statute to defendant's liability on these facts would be error.

The dissent's conclusion that the five-percent cap in the Vehicle Code applies to actions for products liability strains interpretation of the code and would expand the safety belt law well beyond its apparent limitations. The 1995 amendments of § 3135 added a significant limitation to an injured person's ability to recover noneconomic losses related to death, serious impairment of body function, or permanent serious disfigurement arising out of the ownership, maintenance, or use of a motor vehicle. By adopting "modi-

---

606 (1969), and *Schmitzer v Misener-Bennett Ford, Inc*, 135 Mich App 350; 354 NW2d 336 (1984), i.e., that there was no duty to wear a safety belt under statute or otherwise. The fact that subsection 710e(6) contains a damages-reduction cap for cases arising out of the ownership, maintenance, or operation of a motor vehicle does not affect a defendant's ability to seek, by introduction of evidence of plaintiff's violation of the safety provision, full reduction of damages caused by another source, e.g., a product defect.

fied comparative negligence" in subsection 2(b), the Legislature expressed its intention to limit recovery to those situations where the plaintiff is not more than fifty percent at fault for the injury causing death, serious impairment of body function, or permanent serious disfigurement. If the plaintiff is more than fifty percent at fault, no liability obtains in the plaintiff's favor because the Legislature has eliminated the right to damages, i.e., the legal consequences, in such cases. That being the case, an injured person's ability to recover under the statute most recently enacted and most specifically supplying the grounds for any recovery in tort after the adoption of the no-fault act, in which "tort liability arising from the ownership, maintenance, or use . . . of a motor vehicle . . . was in effect abolished," subsection 3135(3), exists only where the injured person is not more than fifty percent at fault.

However, if the Michigan Vehicle Code would trump the provisions of the RJA providing for comparative negligence in products liability cases, the same result with regard to the more directly related provisions of the current no-fault act would logically follow. Thus, not only would the safety belt law prevail over comparative negligence in the RJA for products liability cases, it would also prevail over modified comparative negligence in the current no-fault act.

As I read the safety belt law and the current no-fault act, the Legislature's intent is as follows: If the injured person is not more than fifty percent at fault, failure to wear the safety belt will only effectuate a five-percent reduction in damages where the cause of action arises under subsections 3135(1) and (2) because of death, serious impairment of body func-

tion, or permanent serious disfigurement. However, if the injured person is found to be more than fifty percent at fault, consistent with subsection 3135(2)(b), no damages shall be assessed in favor of that person. Thus, under the amended version of the law, plaintiff here would recover nothing. The dissent's interpretation related to products liability cases must ultimately lead to the contrary conclusion that no damages would be assessed in favor of a person who is more than fifty percent at fault unless that fault arose out of failure to use a safety belt. In that case, an injured party who was ninety percent at fault for losses due to failure to wear a safety belt would still recover ninety-five percent of such losses despite subsection 3135(2)(b). That view clearly stretches the safety belt law far beyond its intended reach.

If the Legislature had intended that the cap on reduction of damages in the safety belt statute prevail over pure comparative negligence, it must have also intended to preclude evidence in the form of expert testimony that the plaintiff's negligence was one hundred percent the cause of the plaintiff's injuries. We should not lightly infer that the Legislature would, by indirection, assert a conflict with a court rule and the Court's asserted authority regarding the admission of evidence. MRE 702.

Finally, this Court has historically encouraged factual resolution of the question of fault and its consequences for recovery by juries. To conclude that the Legislature intended a broad-based preclusion of the comparative negligence principle we adopted in *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979), by its foray into safety belt usage, ascribes

an intent not evident from the language of the statute or its history.

For these reasons, I would affirm the decision of the Court of Appeals.

MALLETT, C.J., and BRICKLEY, J., concurred with BOYLE, J.

KELLY, J. (*dissenting*). I believe the seat belt statute was intended by the Legislature to apply in products liability actions and that the application of the statute in such actions creates no Title-Object Clause violation. Therefore, I disagree with Justice WEAVER's opinion that would hold that the Title-Object Clause prohibits the application of the seat belt statute in a products liability case. I also disagree with Justice BOYLE's opinion, which states that the language of the seat belt statute indicates it was not intended by the Legislature to apply in products liability actions.

### I. TITLE-OBJECT CLAUSE

I do not agree that the constitutional principles embodied in the Title-Object Clause prohibit the seat belt statute from applying in products liability cases. Justice WEAVER's opinion would hold "[a]s a matter of statutory interpretation, we must not, and under constitutional principles we cannot, apply statutes in the motor vehicle code to cases involving the civil liability of manufacturers." *Ante* at 591. The opinion reaches this conclusion because the title of the act includes "liability of owners and operators," but does not explicitly mention the liability of manufacturers. I find this reasoning to be flawed.

The Title-Object Clause provides:

> No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title. [Const 1963, art 4, § 24.]

The purpose of the Title-Object Clause has been " 'many times discussed and passed on by this [C]ourt.' "[1] The clause insures that adequate notice will be given of the possible effects of a law enacted by the Legislature.

> It may be said at the outset that the provision is designed to serve two purposes. *First*, to prevent action by the legislature without receiving the concurrence therein of the requisite number of members by—"bringing together into one bill subjects diverse in their nature, and having no necessary connection, with a view to combine in their favor the advocates of all."—[W]hat is commonly spoken of as logrolling in legislation—and also to prevent clauses being—"inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect." *People [ex rel Drake] v Mahaney*, 13 Mich 481, 494 [(1865)]. [A]nd, *second*, to "challenge the attention" of those affected by the act to its provisions. *People v Wohlford*, 226 Mich 166, 168 [197 NW 558 (1924)].[2]

Justice WEAVER's opinion holds that the seat belt statute is incongruous in a products liability action. Applying the act in such an action would result in the act exceeding the scope of its title in violation of the

---

[1] *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 468; 208 NW2d 469 (1973), quoting *Commerce-Guardian Trust & Savings Bank v Michigan*, 228 Mich 316; 200 NW 267 (1924), and *Rohan v Detroit Racing Ass'n*, 314 Mich 326, 355-356; 22 NW2d 433 (1946).

[2] 228 Mich 330-331. See *Maki v City of East Tawas*, 385 Mich 151, 157-158; 188 NW2d 593 (1971).

Title-Object Clause. The opinion relies on *Maki v City of East Tawas*,[3] to find the application of the seat belt statute in products liability actions to be unconstitutional. *Maki* stands for the rule that the Legislature may limit the permissible scope of an act by limiting its title. At issue in *Maki* was a statute that abolished governmental liability for torts, but whose title included the object of abolishing governmental liability only for negligence.

Liability for torts is much broader than liability for negligence. We held in *Maki* that the specific mention of negligence in an act's title limits the constitutional scope of the act. The Legislature has the right to limit an act in its title or, conversely, to provide for broader application. 385 Mich 157. It limited the scope of the act reviewed in *Maki* by specifying in the title that it would apply to immunity for negligence.

Justice WEAVER has concluded that the Legislature limited the parties whose liability could be affected by the act. She has applied the rule of statutory construction that provides that mention of one thing, but not another, implies exclusion of the other. She maintains that the Legislature limited the parties affected by mentioning the liability of owners and drivers, but not of manufacturers. I find the conclusion unwarranted.

The mere fact that the statute mentions the liability of owners and drivers but does not mention manufacturers is inconclusive. It does not evidence a legislative intent to limit the act to owners and drivers in the way the governmental immunity statute's title pro-

---

[3] 385 Mich 151; 188 NW2d 593 (1971).

vision limited that act's scope in *Maki*. The reason that the title of the statute mentions owners and drivers is that its purpose is to create liability for owners and drivers.[4] The seat belt statute does not *create* liability for manufacturers. There is a vast difference between creating liability and affecting liability, which is what the seat belt statute does.

The seat belt statute affects the liability of manufacturers, but does not mention manufacturers in its title. It does not follow that its application to the civil liability of manufacturers is unconstitutional. If that were the case, would it not be unconstitutional to apply the motor vehicle code to the civil liability of pedestrians,[5] bicyclists,[6] passengers,[7] and the state?[8]

---

[4] The motor vehicle code defines the liability of a driver:

The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. [MCL 257.401(1); MSA 9.2101(1).]

The code further provides for the liability of drivers through the enactment of standards of care, and creates penalties for violations of those duties. See, for example, MCL 257.402; MSA 9.2102. See, generally, MCL 257.601-257.680; MSA 9.2301-9.2380.

[5] *Jacobson v Carlson*, 302 Mich 448; 4 NW2d 721 (1942). (There is no title-object violation where a provision of the motor vehicle code contains a standard of care for pedestrians.)

[6] MCL 257.657; MSA 9.2357. ("Every person riding a bicycle or moped upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter . . . .")

[7] MCL 257.677(2); MSA 9.2377(2). ("A passenger in a vehicle . . . shall not ride in a position as to interfere with the driver's or operator's view ahead or to the sides. . . .")

[8] See, for example, *Dep't of Transportation v Christensen*, 229 Mich App 417; 581 NW2d 807 (1998), in which the Court of Appeals held that MCL 257.719(1); MSA 9.2419(1) applied to the benefit of the Department

The title of the motor vehicle code does not mention them any more than it mentions manufacturers.[9]

Although the Legislature did not name manufacturers in the title to the motor vehicle code, the code has been applied directly to manufacturers for many years. See, for example, 1915 PA 302(16). Several of the code's provisions create minimum standards for automobile equipment.[10] Was not the Legislature attempting to make the manufacturers of that equipment responsible for compliance? Would a manufacturer building a vehicle not meeting those standards be able to sell it, despite the resulting violations, because the motor vehicle code does not apply to it?

---

of Transportation. The Court held that the statute created "absolute liability" for a truck driver whose truck hits an overpass.

[9] Justice WEAVER responds to this argument by pointing to examples of title provisions that are broad enough to justify application of the motor vehicle code to these parties. While I agree that the code's title is broad enough to encompass them, I find her attempt to dismiss this argument unconvincing. Justice WEAVER would hold that the act cannot affect the civil liability of manufacturers because it does not mention manufacturers. Her response does not refute the argument that, under her rule, because the code's title does not mention the state, it cannot constitutionally affect the liability of the state. The act at issue in *Christensen, supra*, MCL 257.719(1); MSA 9.2419(1), lessened the state's liability, thereby *affecting* it. I believe Justice WEAVER's analysis would make the application of the act to the liability of the state unconstitutional, an indication that her analysis is incorrect. See part III.

[10] Specifically, see MCL 257.710b; MSA 9.2410(2), which provides:

A private passenger vehicle manufactured after January 1, 1965 shall not be offered for sale in this state unless the vehicle is equipped with safety belts for the use of the driver and 1 other front seat passenger.

See also MCL 257.685; MSA 9.2385, which requires headlamps and governs their placement and power; MCL 257.686; MSA 9.2386, which requires rear lamps; MCL 257.689; MSA 9.2389, MCL 257.690-257.691; MSA 9.2390-9.2391, MCL 257.696-257.697; MSA 9.2396-9.2397, MCL 257.699-257.701; MSA 9.2399-9.2401, and MCL 257.705-257.707; MSA 9.2405-9.2407.

I believe that it is incorrect to conclude on a broad basis that the motor vehicle code may not constitutionally apply to manufacturers.[11] The title of the motor vehicle code is not as restrictive as the title of the statute found unconstitutional in *Maki*. There, the Legislature specifically limited the scope of the act to the immunity of the government from negligence liability. Here, the Legislature has not restricted the title to apply only to the safety equipment manufacturers are required to include in vehicles they build. The basis of the decision in *Maki* was that the Legislature had limited the scope of the act. By contrast, the Legislature has not limited the application of the motor vehicle code as it applies to manufacturers. Therefore, I conclude that the title does not exclude application to manufacturers.

The fundamental disagreement I have with Justice WEAVER's opinion is that it reflects a belief that the seat belt statute, if applied to manufacturers, created liability for them at the time it was enacted. This is incorrect. While the seat belt statute might increase the liability of a manufacturer today, at the time it became law, the statute lessened the liability of manufacturers. As a result of this misapprehension, Justice WEAVER's concurring opinion takes a narrow view of the code's title provisions by concentrating on the civil liability provision. It ignores other portions of

---

[11] I conclude that Justice WEAVER would adopt a broad preclusion of the motor vehicle code's application to manufacturers. The conclusion arises from her statement that the motor vehicle code cannot constitutionally apply to the manufacture of motor vehicles or the civil liability of manufacturers. See *ante* at 589. Without application to these two areas, I fail to see what application the code could have to a manufacturer.

the title that easily justify the application of the seat belt statute in the products liability context.[12]

One purpose of the Title-Object Clause is to provide notice of a law's scope to those enacting it. Hence, our attention should go to what the Legislature knew at the time it considered enacting a law, and what the law was intended to accomplish when enacted. Not relevant is the state of the law when judicially reviewed. Therefore, to determine properly whether a title-object violation has occurred, we examine the state of the law at the time an act was adopted.[13]

On the date that the seat belt statute became law, it did not create liability for manufacturers. Instead, it limited the recovery of plaintiffs who failed to comply with its provisions. The Legislature enacted the seat belt statute in 1985, creating a standard of care for drivers and front seat passengers by requiring them to

---

[12] For example, the title provides for "regulation and use of streets and highways; . . . penalties and sanctions for violation of this act; . . . [and] enforcement of this act . . . ." In fact, Justice WEAVER relies on provisions like these to support the application of the code to other persons not specifically mentioned. See *ante* at 591, n 7.

This Court has discussed the proper application of the Title-Object Clause on a number of occasions, and "[w]e have often held that this constitutional stricture on statutory enactments was not a hollow formality." 385 Mich 157. " 'However, in effectuating these purposes, the "one object" provision is to be construed reasonably and not in so narrow or technical a manner as to frustrate the legislative intent.' " *Livonia v Dep't of Social Services*, 423 Mich 466, 497; 378 NW2d 402 (1985), quoting *Greentrees v Pignatiello*, 123 Mich App 767, 771; 333 NW2d 350 (1983) (citations omitted). "Legislation, if it has a primary object, is not invalid because it embraces more than 1 means of attaining its primary object." *Local No 1644, AFSC&ME, AFL-CIO v Oakwood Hosp Corp*, 367 Mich 79, 91; 116 NW2d 314 (1962). Moreover, "[a]n act may contain all matters germane to its object" and any provisions which " 'directly relate to, carry out and implement the principal object.' " 423 Mich 497.

[13] If there is a constitutional infirmity in the seat belt statute, it is not to be found in the title.

buckle their seat belts. It provided a penalty for violation of the standard in the form of a civil infraction. To further encourage seat belt usage, the act provided the added penalty of allowing the admission at trial of evidence of a plaintiff's failure to properly use a seat belt. The Legislature limited the penalty to a reduction in damages of five percent.

As Justice WEAVER points out, evidence of seat belt nonuse was not admissible in any action, whether it was for products liability or for negligence, until the seat belt act became law. The reason is that contributory negligence was the law until this Court's decision in *Placek v Sterling Heights*.[14] When we adopted comparative negligence, contributory negligence was seen as harsh and unjust because it had acted as an absolute bar to plaintiffs who were only slightly at fault. Evidence of seat belt nonuse had not been admissible to defeat contributory negligence. *Romankewiz v Black*, 16 Mich App 119; 167 NW2d 606 (1969).

In a negligence action, seat belt nonuse was not admissible under comparative negligence, either, before the seat belt statute was enacted, even though it was no longer a complete bar to recovery. Likewise, seat belt nonuse was inadmissible in products liability actions arising during the years between the enactment of the products liability statute that adopted comparative negligence and the seat belt statute.[15] In effect, when the Legislature enacted the seat belt statute, it replaced a zero-percent reduction under the common law with a five-percent reduction for viola-

---

[14] 405 Mich 638; 275 NW2d 511 (1979).

[15] See *Ullery v Sobie*, 196 Mich App 76; 492 NW2d 739 (1992) (per curiam opinion joined by MARILYN KELLY, P.J.); *Thompson v Fitzpatrick*, 199 Mich App 5; 501 NW2d 172 (1992).

tion of the statute. The five-percent reduction in damages was a penalty specifically authorized by the code's title. Therefore, when the Legislature enacted the seat belt statute, it was intended as a punishment for drivers and front seat passengers. It was not a windfall for plaintiffs, as the concurring opinions would have us believe. It is exactly the type of provision specifically authorized in the title of the act.[16]

I conclude that the Title-Object Clause does not prohibit the direct application of the motor vehicle code in cases involving the liability of a manufacturer. The issue, then, is how broadly the Legislature intended application to be of the punishment contained in the seat belt statute.

## II. STATUTORY ANALYSIS

The Court of Appeals held that the language of the seat belt statute indicates that it was not intended to apply in products liability actions. 219 Mich App 500; 556 NW2d 528 (1996). The seat belt statute provides:

> Failure to wear a safety belt in violation of this section may be considered evidence of negligence and may reduce *the recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle.* However,

---

[16] One example along these lines is MCL 257.402(1); MSA 9.2102(1), which states:

> *In any action, in any court in this state* when it is shown by competent evidence, that a vehicle traveling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction . . . the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. [Emphasis added.]

The controlling language in this statute is very broad. It demonstrates the Legislature's intent to create a statutory duty of care and a punishment for its breach that applies outside the motor vehicle code.

such negligence shall not reduce the recovery for damages by more than 5%. [MCL 257.710e(5); MSA 9.2410(5)(5) (emphasis added).][17]

The Court of Appeals held that a products liability action does not "arise out of the 'ownership, maintenance, or operation of a motor vehicle.'" 219 Mich App 506. The Court based this conclusion on similar language in the no-fault act that this Court has held does not abolish the liability of a manufacturer. The no-fault act provides in pertinent part:

> Notwithstanding any other provision of law, *tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle* . . . is abolished . . . . [MCL 500.3135(3); MSA 24.13135(3) (emphasis added).]

As the Court of Appeals noted, we have held that the no-fault act did not abolish the products liability of a manufacturer:

> Only persons who own, maintain or use motor vehicles can be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. The non-motorist tortfeasor cannot be subject to tort liability for injuries or damage caused by the ownership, maintenance or use of a motor vehicle. [*Citizens Ins Co of America v Tuttle*, 411 Mich 536, 545; 309 NW2d 174 (1981).]

At first glance, a similarity in language of the two statutes is clear. However, the similarity does not indicate that the Legislature intended identical results under the statutes. A comparison of the two reveals that they are not identical, and the difference in the

---

[17] The seat belt statute now appears at MCL 257.710e(6); MSA 9.2410(5)(6).

language that the Legislature chose to include in each is decisive.

The no-fault act refers to "*liability* arising from the ownership, maintenance, or use . . . of a motor vehicle." The seat belt law refers to "*damages* arising out of the ownership, maintenance, or operation of a motor vehicle." The liability arising from a cause and the damages arising from it, are, by definition, not identical. It is entirely possible that someone incurs damages from the operation of a motor vehicle when no liability has arisen from the ownership, maintenance, or operation of the vehicle.[18]

I take issue with Justice BOYLE's suggestion that my interpretation of the seat belt law would expand it beyond its limitations and "trump" recent legislative enactments in the no-fault act. The basis of Justice BOYLE's entire analysis seems to be the belief that the seat belt statute applies only under MCL 500.3135; MSA 24.13135. *Ante* at 597. That the Legislature amended a statute that may conflict with the seat belt statute, in an area we agree both were intended to apply, does not call into question my analysis.

It may be that the Legislature intended this recent enactment to "trump" the seat belt statute, and perhaps Justice BOYLE's dicta to that effect will turn out to be accurate. It is incorrect, however, to suggest that something has gone awry if the seat belt statute should "trump" the current system of apportionment of damages.

---

[18] Justice BOYLE purports to find a distinction between the statutory requirement to wear a seat belt and the statutory punishment for violating the requirement. However, I do not agree that the statutory requirement can be applied through negligence per se, without the damages cap placed on it by the Legislature.

This is exactly what the seat belt rules have always done, whether they were statutory or common law. At common law, seat belt evidence was inadmissible to prove contributory negligence. It was inadmissible, even though its exclusion was inconsistent with the fault apportionment system that completely denied recovery to a plaintiff whose negligence to any degree caused the plaintiff's injuries. It also "trumps" a pure comparative negligence system, like the one previously in effect.

A five-percent cap is no more inconsistent with modified comparative negligence than it was with contributory negligence or pure comparative negligence. In each case, it interferes with a jury determination of fault. I express no opinion on the interaction between the two current statutes. However, it seems to me that the fact that the seat belt statute might "trump" modified comparative negligence is not as inconsistent as Justice BOYLE would suggest.

As indicated before, I believe Justice BOYLE's opinion suffers from the same analytical flaw as Justice WEAVER's: it attempts to determine legislative intent on the basis of the state of the law today, rather than at the time the law was enacted. The opinion concludes by stating:

> To conclude that the Legislature intended a broad-based preclusion of the comparative negligence principle we adopted in *Placek* . . . by its foray into safety belt usage, ascribes an intent not evident from the language of the statute or its history. [*Ante* at 599-600.]

If the Legislature did not intend to preclude the application of pure comparative negligence when it adopted the seat belt statute, then what did it intend?

I believe the Legislature intended the broad-based penalty of the seat belt statute to be applicable in any action involving a motor vehicle accident. What Justice BOYLE loses sight of is that, at the time the statute was enacted, it was a punishment for plaintiffs who failed to wear their seat belts. The punishment is proper under the title of the motor vehicle code, which provides for regulations on the use of the road and, also, for statutes which punish their violation. The seat belt statute was designed to encourage drivers to wear their seat belts. The Legislature must have concluded that limiting recovery for those who fail to wear seat belts would further its goal. If this is true, the more actions in which a plaintiff's recovery was limited, the more effective the act would be. The fact that the state of the law has changed does not retroactively alter the Legislature's intent in passing the seat belt statute.

### III. NEGLIGENCE PER SE

The concurring opinions admit that their analyses prevent the direct application of the motor vehicle code to the liability of manufacturers. Although they cannot agree on a rationale for this conclusion, they do agree that the availability of negligence per se limits the harm done. I believe that application of the motor vehicle code in products liability actions through negligence per se, alone, is inconsistent with legislative intent.

Negligence per se allows the use of a violation of a statutory standard of care as evidence of negligence. Not all statutes content themselves with merely providing standards of care. Some limit the penalty, as the seat belt statute does, to less than that arrived at

under negligence per se, while others expand liability for violations well beyond it.

The seat belt statute provides for the admission of otherwise excluded evidence and limits its use. If the Legislature had the power to enact such a statute, the opinion places that power in serious doubt.

After today, the Legislature may not enact a statute of similarly limited effect without running the risk that the Court will apply it somewhere else and ignore the limit. It is not clear that, in 1985, the Legislature would have enacted a statute that allowed unlimited use of seat belt evidence, or allowed a massive reduction in damages for nonuse. What is clear, however, is that it did not. What it enacted was a standard of care that carried with it a limited penalty for its violation.

The concurring opinions would allow use of the evidence the Legislature made admissible in actions to which, they argue, the statute does not directly apply. Moreover, they would allow it without the limitations the Legislature placed on its admission. Under their analysis, the seat belt statute was intended to apply in negligence actions, where its application is limited by its own terms. Yet, the opinions state, in actions in which the statute was not intended to apply, the doctrine of negligence per se allows the evidence, without the statute's limitations.

Assume the Legislature had the power to create the standard of care and to provide that violations of it may be used as evidence of negligence. It would follow, then, that the Legislature had the power to limit the standard's application.

Moreover, unlike the negligence per se application of the seat belt statute, which expands its effect

beyond its inherent limitation, some motor vehicle
code provisions will be unnecessarily limited under
negligence per se. In this way, the concurring opin-
ions frustrate the Legislature's intent and limit its
power.

One example of a statute that would be unnecessa-
rily limited by today's concurring opinions is MCL
257.719(1); MSA 9.2419(1). It states:

> A vehicle unloaded or with load shall not exceed a height
> of 13 feet 6 inches. The owner of a vehicle that collides
> with a lawfully established bridge or viaduct *is liable for all
> damage and injury resulting from a collision caused by
> the height of the vehicle,* whether the clearance of the
> bridge or viaduct is posted or not. [Emphasis added.]

The Court of Appeals recently held that, although a
violation of the statute would establish negligence per
se, the statute provides for "absolute liability." *Dep't
of Transportation v Christensen,* 229 Mich App 417;
581 NW2d 807 (1998). The Court reversed the trial
court's decision that the driver's "liability was subject
to the principles of comparative fault, joint and sev-
eral liability, and proximate cause."

Had the defendant been General Motors Corpora-
tion instead of MDOT, GM would not have had the bene-
fit of this absolute liability statute. Instead, the con-
curring opinions' conclusion that the motor vehicle
code does not affect the liability of a manufacturer
means that the standard of care may be applied
through negligence per se. However, the absolute lia-
bility provision will not apply because the statute can-
not be used directly in a products liability action.

The concurring opinions will have a much broader
effect than they intend because they render some par-

ties, other than manufacturers, no longer subject to motor vehicle code liability. Assume that Justice WEAVER is correct in finding that the motor vehicle code does not apply to manufacturers because it does not specifically mention that it will govern their liability. How, then, is the liability of the state governed by the act? While there are provisions in the title for the establishment of state agencies and for prescribing their "powers and duties," the title makes no mention of establishing the liability of a state agency.

The plaintiff in *Christensen, supra,* bore the burden of pleading in avoidance of governmental immunity and also of proving his negligence action.[19] There, the Court of Appeals applied provisions from the motor vehicle code to the liability of an agency of state government, for which its title does not specifically create liability. It seems to me that application of the statute to the state is entirely proper. However, it would seem to violate the rules proposed by the concurring opinions today.

### IV. CONCLUSION

In *Lowe* we found that evidence of nonuse of a seat belt was admissible against rear seat passengers in a products liability action. We noted that the inclusion of the evidence might be inconsistent with the seat belt statute. However, we concluded that the inconsistency was for the Legislature to remedy.

---

[19] The governmental tort liability act, MCL 691.1407; MSA 3.996(107), waives the state's immunity from liability in certain limited areas. However, in order to successfully bring suit against an agency of the state, one has to plead in avoidance of governmental immunity *and* prove an underlying cause of action. See *Canon v Thumudo,* 430 Mich 326; 422 NW2d 688 (1988).

> The issue presented does not involve statutory construction . . . . While we are cognizant of the potential argument that the effect of the five-percent limitation could lead, potentially and perhaps anomalously, to the irrational result of protecting the recoveries of individuals whose failure to use seat belts was in violation of the statute, while not protecting the recoveries of those whose failure to use seat belts was not in violation of it, we are compelled to conclude that the effect is essentially a legislative concern. [*Lowe v Estate Motors Ltd*, 428 Mich 439, 469; 410 NW2d 706 (1987).]

In the years since *Lowe*, the Legislature has not amended or repealed the seat belt statute. Therefore, it is still the law. The state of the law has changed dramatically since the seat belt statute was enacted. However, that is no reason to ignore the state of the law at the time of the statute's passage and the reasons that impelled it. The fact that the landscape of the law is different today does not mean that there is a title-object problem. Nor does it mean that, as a matter of statutory interpretation, the seat belt statute cannot apply.

The reason the seat belt statute now favors plaintiffs over defendants is that this Court has ruled that seat belt nonuse is admissible in products liability actions under the common law. Perhaps this ruling creates a conflict between acts of the Legislature, or between its acts and the decisions of this Court. The solution to the conflict, if one exists, is not to expand the purpose of the Title-Object Clause or, retroactively, to alter the Legislature's intent.

Therefore, I respectfully dissent.

CAVANAGH, J., concurred with KELLY, J.